**MCI WORLDCOM, INC.,
et al., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**Competitive Telecommunications Association, et al.,
Intervenors.**

**Nos. 96–1459, 96–1477, 97–1009, 97–1676, 98–1003, 98–1007, 99–1240 and 99–1242.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 14, 2000.

Decided April 28, 2000.

---

Donald B. Verrilli, Jr. argued the cause for petitioners and supporting intervenors. With him on the briefs were Thomas F. O'Neil III, Matthew B. Pachman, Jodie L. Kelley, Mark C. Rosenblum, Roy E. Hoffinger, David W. Carpenter, Peter D. Keisler, Paul J. Zidlicky, Robert M. McDowell, Leon M. Kestenbaum, Michael B. Fingerhut, James M. Smith, Michael J. Shortley, III, Gail L. Polivy, Charles C. Hunter, and Catherine M. Hannan. Jay C. Keithley, David J. Gudino, Dana Frix, Genevieve Morelli, and Richard S. Whitt entered appearances.

John E. Ingle, Deputy Associate General Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan and Robert J. Wiggers, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, Susan L. Launer, Deputy Associate General Counsel, and Laurence N. Bourne, Counsel. Richard K. Welch, Counsel, entered an appearance.

Henry D. Levine, Ellen G. Block, and James S. Blaszak appeared on the brief for intervenors in support of respondents.

Before: SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioners, the large longdistance telecommunications carriers, seek review of an FCC order prohibiting them from filing tariffs with the Commission. We reject their petition.

I.

Commission efforts to move to a nontariff environment for interexchange carriers—insofar as those carriers do not exercise market power—have not had an easy time with this court and the Supreme

Court. For over six decades a tariff regime was mandated by the Communications Act of 1934, which requires the FCC to review telecommunications carriers' tariffs to ensure their reasonableness. *See* 47 U.S.C. §§ 201–202. The Act requires carriers to file their tariffs with the FCC, *see* 47 U.S.C. § 203(a), and they are prohibited from charging consumers except as provided in the tariffs. *See* 47 U.S.C. § 203(c) (establishing what is popularly known as the "filed-rate doctrine"). Starting in the early 1980s, the Commission tried to prohibit tariff-filing by nondominant carriers—in essence, those other than AT&T—but that effort was successfully challenged in this court in *MCI Telecommunications Corp. v. FCC*, 765 F.2d 1186 (D.C.Cir. 1985), where we struck down "mandatory detariffing" as inconsistent with the 1934 Act.

There remained some confusion as to whether the FCC's surviving "permissive detariffing" policy for nondominant carriers—allowing those carriers to choose whether to file tariffs—was premised on an agency nonenforcement position, subject to only very limited judicial review, or whether it constituted a substantive regulatory framework. AT&T, by filing a complaint against MCI with the Commission over MCI's non-filing (as it had a right to do under section 208 of the Communications Act, 47 U.S.C. § 208(a)), put the cat among the canaries and forced the Commission, by defending MCI, to embrace the substantive position which we had rejected. The result was more Commission reversals, *see American Tel. & Tel. Co. v. FCC*, 978 F.2d 727 (D.C.Cir.1992); *American Tel. & Tel. Co. v. FCC*, 1993 WL 260778 (D.C.Cir.1993), this time affirmed by the Supreme Court. *See MCI Telecommunications Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994). The upshot of all of this was that the Commission simply could

not suspend (permissively or mandatorily) the tariff-filing obligations for interexchange carriers, whether they had market power or not.

The landscape changed, however, when Congress passed the Telecommunications Act of 1996, which requires the FCC to

forbear from applying any regulation or any provision of this chapter to a telecommunications carrier or telecommunications service, or class of telecommunications carriers or telecommunications services, in any or some of its or their geographic markets, if the Commission determines that—

(1) enforcement of such regulation or provision is not necessary to ensure that the charges, practices, classifications, or regulations by, for, or in connection with that telecommunications carrier or telecommunications service are just and reasonable and are not unjustly or unreasonably discriminatory;

(2) enforcement of such regulation or provision is not necessary for the protection of consumers; and

(3) forbearance from applying such provision or regulation is consistent with the public interest.

47 U.S.C. § 160(a).[1]

Armed with this new statutory authority, the FCC moved once more to detariff the interstate, domestic, interexchange services of nondominant carriers—now all of the interexchange companies. In a *Notice of Proposed Rulemaking*, 11 F.C.C. R. 7141 (1996), the Commission tentatively concluded that the 1996 Act required it to "forbear from applying" the tariffing requirement to nondominant carriers, and that permitting carriers to file tariffs at all would not be in the public interest. It thus announced its intention to implement mandatory detariffing by "forbearing from applying" § 203(a) of the 1934 Act. Fol-

---

1. The 1996 Act was passed in the expectation that telecommunications carriers would actively seek detariffing. *See* 47 U.S.C. § 160(c) ("Any telecommunications carrier, or class of telecommunications carrier, may submit a petition to the Commission requesting that the Commission exercise the authority granted under this section with respect to that carrier or those carriers. . . .").

lowing a comment period the FCC confirmed that enforcement of the tariffing provision is neither necessary to ensure just and reasonable, nondiscriminatory rates, nor necessary for the protection of consumers, and ordered mandatory detariffing. *See Second Report and Order,* 11 F.C.C.R. 20730, 20742–47, 20750–53 (1996).

In their comments, petitioners did not dispute the Commission's tentative conclusion that tariffing was no longer necessary, but argued that the Commission's intention to order *mandatory* detariffing—rather than permissive detariffing—both exceeded the Commission's statutory authority and was unreasonable. They claimed that under the 1996 Act the FCC may forbear from enforcing § 203, but cannot actually forbid the filing of tariffs. Petitioners also complained that detariffing would lead to their customer relationships being governed by state contract laws, which, in some cases, might require the execution of a new contract whenever the carrier would want to change its rates. According to petitioners, the necessity of mailing new contracts to customers would increase their transaction costs resulting in higher prices for consumers, make casual-calling options more difficult, and hinder their ability to respond quickly to competitors' price changes. *See id.* at 20755–56.[2] If tariffs were permitted, petitioners claimed, they could still negotiate individual contracts with large customers, but also file tariffs for millions of mass-market consumers, the optimal result for both groups. In response to objections by consumer groups that carriers might negotiate contracts with individual customers and then rely on the filed-rate doctrine to collect higher tariff rates, petitioners argued that courts would not apply the doctrine because permissive detariffing would gut its rationale: the filed rate would no longer be the only lawful rate. *See id.* at 20757.

The Commission rejected petitioners' statutory and practical arguments. The FCC concluded that outside the filing requirement of § 203(a) there was no provision granting carriers a right to file tariffs, so its forbearance authority under the 1999 Act inherently contemplated mandatory detariffing. It found petitioners' proposed distinction between large and small customers immaterial, because the competitive benefits of detariffing would be felt by both. The Commission was also concerned that courts might not interpret the interplay of permissive detariffing and the filed-rate doctrine quite as petitioners suggested, and that carriers would use the continued existence of the filed-rate doctrine to refuse to negotiate individualized contracts with customers. The risk that tariffs might serve to facilitate price fixing was also a factor cited by the Commission in its order, but in response to two petitions for reconsideration the Commission abandoned this rationale. *See id.* at 20760, 20765–67, 20772; *Order on Reconsideration, In re Policy and Rules Concerning the Interstate, Interexchange Marketplace,* 12 F.C.C.R. 15014 (1997); *Second Order on Reconsideration and Erratum, In re Policy and Rules Concerning the Interstate, Interexchange Marketplace,* 14 F.C.C.R. 6004 (1999).

Petitioners challenge both the order and the reconsideration orders, and raise before us the same concerns presented to the Commission. They argue that the mandatory detariffing order is *ultra vires* because the FCC lacks statutory authority to forbid the filing of tariffs. Petitioners claim alternatively that the order is arbitrary and capricious because the Commission's preference for mandatory detariffing over permissive detariffing is not supported by facts or logic, the Commission failed to respond to a third alternative advanced by AT&T, and the Commission based its decision in part on a misunderstanding of the filed-rate doctrine.

## II.

■ We begin with petitioners' argument that the 1996 Act does not give the

2. Casual calling refers to collect calls, credit-

card calls, or dial around calling.

FCC authority to implement mandatory detariffing—it cannot forbid the filing of tariffs. The Act states that the FCC "shall *forbear from applying* any regulation or any provision of this chapter . . . if the Commission determines that (1) *enforcement* . . . is not necessary [to ensure rates are just, reasonable, and nondiscriminatory], (2) *enforcement* . . . is not necessary for the protection of consumers, and (3) *forbearance* from *applying* such provision or regulation is consistent with the public interest." 47 U.S.C. § 160(a) (emphasis added). Petitioners urge that under the plain language of the statute the Commission is empowered merely to exercise its discretion not to *enforce* a provision under such circumstances. In other words, to forbear is to "refrain from action," *see* Pet. Br. at 17 (*citing, e.g.,* Black's Law Dictionary 329 (5th ed.1983)); nonenforcement is therefore forbearance, but barring the doors of the FCC to lawyers bearing tariff filings and throwing out extant tariffs, both affirmative acts, are not.

Petitioners offer in support of their interpretation our opinion in *American Telephone & Telegraph,* where we stated that the FCC "went beyond mere forbearance . . . by making detariffing mandatory and by telling non-dominant carriers that it would no longer even accept their rate filings. . . ." 978 F.2d at 729–30. But we ourselves have used the word forbear in two different ways. In *MCI Telecommunications,* we said "forbearance was made mandatory" and the Commission "changed the permissive forbearance arrangement into a mandatory one." 765 F.2d at 1191 n. 4, 1189. So it is hardly open to us to deny the ambiguity which accompanies the statutory use of that term—particularly when Congress acted against a backdrop of our decisions. Moreover, the crucial phrase in the statute is not "forbear from enforcing" but rather "forbear from applying," which suggests a broader authority. As the Commission correctly points out no

provision of the Communications Act except § 203(a) requires tariffing, and no provision gives a carrier a positive right to file a tariff, so if it forbears from applying § 203(a) the Commission's staff is not obliged to accept filings. We therefore think that the Commission's interpretation of the Act is entitled to *Chevron* deference. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[3]

Petitioners alternatively claim that the Commission's order is arbitrary and capricious, and, to use the Act's terminology, against the "public interest" because its stated objectives easily can be met by adopting a permissive-detariffing regime, and therefore the extra transaction costs imposed on the carriers—and passed through to consumers—are unnecessary. The major thrust of petitioners' arguments is that the Commission inadequately responded to their comments, and therefore the case should be remanded to the FCC so as to require the agency to do so. (It is worth noting that we have stayed the Commission's order so the status quo favors the petitioners for so long as they can maintain it.)

The Commission, as we have mentioned, wishes to disentangle the interexchange carriers' prices from the filed-rate doctrine. The Commission has long been concerned that the necessity of filing tariffs hinders competitive responsiveness. And, according to consumer representatives' comments presented to the FCC, the filed-rate doctrine has been used by the carriers as a shield to avoid individual contract negotiations with large and small users, thereby reducing competition among carriers. Petitioners argue that streamlined tariff procedures already adopted by the FCC, *see Tariff Filing Requirements for Nondominant Common Carriers,* 8 F.C.C.R. 6752 (1993), and carriers' ability to file tariffs for individual consumers have obviated those concerns. But the Com-

---

**3.** Petitioners seem to argue that the delegation of the authority to "forbear" implicitly precludes authority to forbid but that is even more of a stretch.

mission reasonably disagreed, in part relying on the consumers' reported experience under those procedures, and in part because it was wary that the filed-rate doctrine might be interpreted by state and federal courts to interfere with free-market behavior. *See Second Report and Order*, 11 F.C.C.R. at 20760–61, 20766–67.

Perhaps the most interesting argument in the case relates to an AT&T *ex parte* letter (suitably filed) sent after the comment period ended. In a rather downplayed alternative argument AT&T suggested in a single paragraph that if the Commission's interpretation of forbearance was legitimate (which of course AT&T denied) the Commission could eliminate certain problems with tariffs—and thereby move to only permissive detariffing—if it would forbear from enforcing—or even forbid the application of—the filed-rate doctrine, 47 U.S.C. § 203(c). The Commission did not respond to this rather subtle suggestion and petitioners contend that that failure alone requires a remand. The FCC argues that AT&T's comment was only a throwaway, inconsistent with petitioners' primary argument that mandatory forbearance is *ultra vires*, and not even part of its formal comment, so we should not regard the issue as properly presented to the Commission under 47 U.S.C. § 405(a). If that were so, we would not have jurisdiction to consider the point. We do not think that is quite correct, although it is a close question.

■ Petitioners note that the Commission's order refers to several *ex parte* filings received after the filing in issue here. *See Second Report and Order*, 11 F.C.C.R. at 20781–82 nn. 253 & 254. AT&T's filing was not long, and the relevant paragraph concluded a discussion on one of the key issues of the proceeding: whether the filed-rate doctrine would be an impediment to permissive detariffing. The paragraph—even though presented as an alternative argument—does suggest that for-

bearance from § 203(c) would eliminate the possibility of carriers' invoking the filed-rate doctrine. Therefore, we think the argument was presented—if barely— to the Commission.

■ Still, it is one thing to preserve a point for judicial review and quite another to raise the issue with sufficient force to require an agency to formally respond. An agency is not obliged to respond to every comment, only those that can be thought to challenge a fundamental premise. *See Grand Canyon Air Tour Coalition v. FAA*, 154 F.3d 455, 468 (D.C.Cir. 1998) ("An agency must ... demonstrate the rationality of its decisionmaking process by responding to those comments that are relevant *and significant*.") (emphasis added). In this case, AT&T's late *ex parte* alternative comment does not seem to us to be forceful enough to have obliged the Commission to squarely confront it. Certainly the Commission made clear its concern that if tariffs were permitted it could not foresee how the judiciary (in this case, probably state courts) would treat the filed-rate doctrine. It seems obvious to us that the Commission would not have wished to risk the doctrine's continued employment even had AT&T's device been tried.[4]

Moreover, as we read the Commission's decision the *essence* of its reasoning was a desire to put the interexchange carriers under the same market conditions as apply to any other nonregulated provider of services in our economy. The Commission concluded that "a regime without nondominant interexchange carrier tariffs for interstate, domestic, interexchange service is the most pro-competitive, deregulatory system." *Second Report and Order*, 11 F.C.C.R. at 20760. It thought the public interest would best be served by "establishing market conditions that more closely resemble an unregulated environment." *See id.* It noted that the "parties that oppose complete detariffing have not

---

4. Since the filed-rate doctrine is applied by courts, even if it has its genesis in the 1934 Act, the Commission's concern about the

filed-rate doctrine is not unreasonable and is certainly not, as petitioners claim, legally erroneous.

shown that the business of providing interstate, domestic, interexchange services offered by nondominant interexchange carriers should be subject to a regulatory regime that is not available to firms that compete in any other market in this country." *Id.* at 20763. And, importantly, the Commission found that permitting carriers to file tariffs on a voluntary basis would undermine the competition-enhancing effect of detariffing. *See id.* at 20760.[5] Under such circumstances, remand is not necessary for the agency to consider the proposed alternative. *See Center for Science in the Public Interest v. Department of the Treasury,* 797 F.2d 995, 1004 (D.C.Cir.1986).

■ Tariff filing, in other words, in the Commission's view is an undesirable deviation from the market—at least where there are no market imperfections. Petitioners contend that the Commission could

not foreclose a permissive detariffing without more justification than simply a desire to embrace the free market. We think, however, the Commission was entitled to value the free market, the benefits of which are rather well established. Indeed, the 1996 Act provides that "[i]f the Commission determines that . . . forbearance will promote competition . . . that determination may be the basis for a . . . finding that forbearance is in the public interest." 47 U.S.C. § 160(b). It was certainly reasonable to move regulation in that direction even if it ostensibly raises transaction costs for the carriers.[6]

\*　　\*　　\*　　\*　　\*　　\*

The petition for review is denied.

*So ordered.*

---

5.　The agency rejected an alternative similar to AT&T's without even referring to the danger of judicial mishandling of the filed-rate doctrine; the focus was squarely on competition. *See id.* at 20766–67.

6.　The Commission did not, as petitioners contend, ignore the probability of increased

transaction costs. It simply found them insignificant compared to the competitive benefits of detariffing. *See Second Report and Order,* 11 F.C.C.R. at 20764.