801 A.2d 281

MARTIN WEINBERG, ON BEHALF OF HIMSELF AND ALL OTH-
ERS SIMILARLY SITUATED, PLAINTIFF–APPELLANT, v.
SPRINT CORPORATION, DEFENDANT–RESPONDENT.

Argued February 11, 2002—Decided July 22, 2002.

234

*Peter S. Linden,* a member of the New York bar, argued the cause for appellant (*Bernstein Liebhard & Lifshitz,* attorneys; *Mr. Linden and Robert J. Berg,* on the briefs).

*Russell S. Jones, Jr.,* a member of the Missouri bar, argued the cause for respondent (*Bloom Rubenstein Karinja & Dillon,* attorneys; *Mr. Jones and Paul J. Dillon,* on the briefs).

The opinion of the Court was delivered by

LaVECCHIA, J.

In *Meshinsky v. Nichols Yacht Sales, Inc.,* 110 *N.J.* 464, 541 *A.*2d 1063 (1988), the Court addressed the requirement that a private plaintiff sustain an ascertainable loss in order to bring a

cause of action under the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to 20(Act). Meshinsky noted that the positions of a private plaintiff and the Attorney General are sharply different in that respect. "While the Attorney General does not have to prove that the victim was damaged by the unlawful conduct, *N.J.S.A.* 56:8–2, a private plaintiff must show that he or she suffered an 'ascertainable loss ... as a result of' the unlawful conduct." *Meshinsky, supra,* 110 *N.J.* at 473, 541 *A.*2d 1063 (citation omitted).

 In this appeal plaintiff invites us to eliminate the statutory distinction between the standing of the Attorney General and a private plaintiff, and to allow a private injunctive action for consumer fraud irrespective of the plaintiff's ability to claim ascertainable loss. We reject the invitation to vitiate the distinction between the powers of the Attorney General and private plaintiffs under the Act. The distinction was drawn by the Legislature in unmistakable terms and we are not free to ignore the requirement of ascertainable loss as a predicate to a private cause of action for consumer fraud. Instead, we must construe that requirement reasonably and sensibly. We conclude that to have standing under the Act a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment. In such a case, even if the factfinder ultimately determines that the loss has not been proven, a private plaintiff may obtain injunctive relief under the Act, along with attorneys' fees when unconscionable conduct is found to exist.

## I.

Defendant Sprint Corporation is a national long-distance provider that advertises and provides services to New Jersey residents. Plaintiff Martin Weinberg is a residential telephone customer of defendant, and has been since 1983. In December 1995, plaintiff filed a national class action lawsuit against defendant on behalf of residential users of defendant's long-distance telephone services. Plaintiff claims that defendant's national television commercials induced residential customers to use its long-distance services by

employing deceptive, fraudulent, misleading, and/or false advertising and promotional practices. Plaintiff contends that defendant's practices were designed to misrepresent and conceal its practice of charging a full minute of telephone usage even if the caller was connected for a few seconds. That practice of "rounding up" to the next highest minute is alleged to be an unconscionable practice that results in millions of dollars of excess billing. It is undisputed that defendant's advertisements during the applicable period did not explain the "rounding up" practice when stating the per-minute charge.

Defendant's federally filed tariffs for its long-distance service during the period involved in this lawsuit stated that it charged "per-minute" rates. Although defendant did not explicitly disclose its practice of "rounding up" in its federal tariffs, nothing in the record demonstrates that defendant's practice was inconsistent with its filed tariff. Indeed, in 1993, the Federal Communications Commission (FCC) had declared that telephone billing on a per-minute basis, rather than per second, was consistent with its guidelines. *Porr v. NYNEX Corp.*, 230 *A.D.*2d 564, 660 *N.Y.S.*2d 440, 448 (N.Y.App.Div.1997) (finding that plaintiff's claims were barred by filed rate doctrine notwithstanding that tariff did not disclose explicitly practice of rounding up), *appeal denied*, 91 *N.Y.*2d 807, 669 *N.Y.S.*2d 260, 692 *N.E.*2d 129 (N.Y.1998). After plaintiff's lawsuit was filed, defendant began disclosing its practice of rounding up. In its 1996 rate filing with the New Jersey Board of Public Utilities (NJBPU), it stated that "[e]ach fractional call is rounded up to the next minute." Literature sent to current customers or to members of the public interested in its product similarly explained the billing practice of rounding up.

Although the record is clear that defendant did round up to the next minute, the record is bereft of any evidence that plaintiff could have purchased a sub-minute residential product instead of defendant's per-minute service. The record is replete with advertisements from other long-distance providers regarding their residential customer and business customer services; however, none

of the advertisements establish that during the relevant time period a residential customer in New Jersey could have purchased a sub-minute product from another long-distance company.[1]

Plaintiff's complaint alleges three causes of action. First, plaintiff contends that defendant committed common-law fraud by knowingly engaging in deceptive practices, uniform misrepresentations, and material omissions in order to induce plaintiffs unknowingly to pay for call time they did not use. Second, plaintiff claims that defendant committed consumer fraud in violation of the Act. Third, plaintiff alleges that defendant engaged in negligent misrepresentation. Specifically, plaintiff asserts that defendant had a duty to inform the public about its residential long-distance billing practices and that its failure to do so was negligent. By way of relief plaintiff requests: (1) an injunction to prevent defendant from engaging in the complained-of conduct and the disgorgement of revenues wrongfully collected; (2) an accounting of all monies wrongfully received; (3) statutory damages under the New Jersey Consumer Fraud Act, including reasonable attorneys' fees, disbursements, and costs of suit; (4) compensatory damages; and (5) punitive damages.

In January 1996, defendant removed the case to the United States District Court for the District of New Jersey on preemption grounds. Plaintiff then successfully moved to remand the matter to state court. *Weinberg v. Sprint Corp.,* 165 *F.R.D.* 431, *appeal dismissed,* 1996 *WL* 673501 (D.N.J.1996). In granting the motion to remand, the district court noted that plaintiff "does not argue that the rates Sprint charged deviated from the tariff rates that, under federal law, Sprint must file with the Federal Communications Commission." *Id.* at 436.

---

[1] Our dissenting colleagues are mistaken in relying on plaintiff's unsupported "assertion" that other companies offered a sub-minute billing product. After discovery, plaintiff could not demonstrate that a genuine issue existed on the availability of a sub-minute residential product offered in New Jersey.

Following the remand, plaintiff moved for class certification and defendant moved to dismiss. The trial court dismissed the case in part, finding that the filed rate doctrine precluded plaintiff's claim for monetary relief, but the court allowed plaintiff's claim for injunctive relief to proceed nonetheless. The court also granted class certification limited to residential long-distance customers in New Jersey.

At the conclusion of discovery, cross motions for summary judgment were filed. The trial court granted defendant's motion, reasoning that plaintiff's claim for injunctive relief under the Consumer Fraud Act must fail because defendant complied with FCC disclosure requirements and because plaintiff could not demonstrate any genuine issue of material fact to support his claim of ascertainable loss as a result of defendant's conduct. The trial court also dismissed plaintiff's claims for common-law fraud and negligent misrepresentation, reasoning similarly that plaintiff could not prove damages.

The Appellate Division affirmed substantially for the reasons expressed below, noting in particular that plaintiff failed to demonstrate any ascertainable loss as required by *N.J.S.A.* 56:8–19 for a private cause of action under the Act. We granted certification, 170 *N.J.* 210, 785 *A.*2d 438 (2001). We agree that plaintiff has suffered no ascertainable loss because the filed rate doctrine precludes any award of damages to him or to the class, and so dismissal of the claim for damages was appropriate. We also conclude that the Act requires ascertainable loss as an essential predicate for a private cause of action. Therefore, because plaintiff failed to demonstrate that his claim of personal ascertainable loss posed a genuine issue of material fact that required submission to a jury, his remaining claims for injunctive relief and for attorneys' fees properly were dismissed also.

## II.

Courts and commentators often refer to *Keogh v. Chicago & N.W. R. Co.*, 260 *U.S.* 156, 43 *S.Ct.* 47, 67 *L.Ed.* 183 (1922), as the

seminal case addressing the filed rate doctrine. *See, e.g., Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 *U.S.* 116, 126, 110 *S.Ct.* 2759, 2765, 111 *L.Ed.*2d 94, 108 (1990); *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 *F.*3d 979, 992 (9th Cir.2000); *Wegoland Ltd. v. NYNEX Corp.,* 27 *F.*3d 17, 19 (2d Cir.1994); Keith A. Rowley, Note, *Immunity from Regulatory Price Squeeze Claims: From Keogh, Parker, and Noerr to Town of Concord and Beyond,* 70 *Tex. L.Rev.* 399, 413 (1991). In *Keogh,* the plaintiff, a private shipper, alleged that the defendants, railway companies, conspired to fix freight transportation rates at an unusually high level. 260 *U.S.* at 160–61, 43 *S.Ct.* at 48, 67 *L.Ed.* at 186. The plaintiff sought damages as a result of having to pay the higher rates. *Ibid.* The Supreme Court held that plaintiff could not recover damages from the defendants because the rates charged were consistent with the rates filed with and accepted by the Interstate Commerce Commission. *Id.* at 162, 43 *S.Ct.* at 49, 67 *L.Ed.* at 187.

The filed rate doctrine clearly was applicable to long-distance telecommunication carriers throughout the period covered by plaintiff's complaint.[2] The doctrine has been described as central to the regulatory scheme for interstate telecommunications carriers. *Fax Telecommunicaciones, Inc. v. AT&T,* 138 *F.*3d 479, 488

---

[2] In *MCI WorldCom v. Federal Communications Commission,* 209 *F.*3d 760 (D.C.Cir.2000), long-distance telecommunications companies petitioned the court to review FCC orders prohibiting the companies from filing tariffs with the agency. *Id.* at 761. The District of Columbia Circuit Court of Appeals held that the FCC could exercise its forbearance authority under the Telecommunications Act of 1996 to end the practice of setting rates, terms, and conditions through tariffs. *Id.* at 766. Thus, on July 31, 2001, the FCC ended its processing of tariffs for long-distance domestic telecommunications services. Charles H. Helein, Jonathan S. Marashlian & Loubna W. Haddad, *Detariffing and the Death of the Filed Tariff Doctrine: Deregulating in the "Self" Interest,* 54 *Fed. Comm. L.J.* 281, 282 (2001). However, all events on which plaintiff bases his complaint occurred well before any of the FCC's recent changes in practice that may affect the future viability of the doctrine in the telecommunications field. See *Emperor Clock Co. v. AT & T Corp.,* 727 So.2d 41, 42 (Ala.1998) (noting but not reaching argument that FCC recent changes may render doctrine obsolete in respect of telecommunications field because events on which plaintiff based its claim had occurred prior to those agency changes).

(2d Cir.1998). "Federal law requires that common carriers of communications services file with the Federal Communications Commission (FCC) a list of tariffs, which are 'schedules showing all charges ... and showing the classifications, practices, and regulations affecting such charges.'" *ICOM Holding, Inc. v. MCI Worldcom, Inc.,* 238 *F.*3d 219, 221 (2d Cir.2001) (citing 47 *U.S.C.* § 203(a)). Carriers may not "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified" in their filed tariffs. *ICOM, supra,* 238 *F.*3d at 221 (citing 47 *U.S.C.* § 203(c)).

 The filed rate doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Fax Telecommunicaciones, supra,* 138 *F.*3d at 488 (citing *Arkansas Louisiana Gas v. Hall,* 453 *U.S.* 571, 577, 101 *S.Ct.* 2925, 2930, 69 *L. Ed.*2d 856, 863–64 (1981)). "[T]he [Federal Communications Act] does not permit either a [customer's] ignorance or the carrier's misquotation of the applicable rate to serve as a defense to the collection of the filed rate." *Fax Telecommunicaciones, supra,* 138 *F.*3d at 488 (quoting *Maislin, supra,* 497 *U.S.* at 120, 110 *S.Ct.* at 2763, 111 *L.Ed.*2d at 104). "[C]ustomers are 'conclusively presumed' to have constructive knowledge of the filed tariff...." *Fax Telecommunicaciones, supra,* 138 *F.*3d at 489 (citing *Kansas City S. R. Co. v. Carl,* 227 *U.S.* 639, 653, 33 *S.Ct.* 391, 395, 57 *L.Ed.* 683, 688 (1913)). Thus, two policy goals are advanced by courts' strict application of the filed rate doctrine: (1) the prevention of price discrimination by carriers as among ratepayers; and (2) the preservation of the exclusive role of federal agencies in approving reasonable rates for telecommunication service and the exclusion of courts from the ratemaking process. *Fax Telecommunicaciones, supra,* 138 *F.*3d at 489 (citations omitted).

*AT & T Co. v. Central Office Telephone, Inc.,* 524 *U.S.* 214, 118 *S.Ct.* 1956, 141 *L.Ed.*2d 222 (1998), is the United States Supreme Court's most recent pronouncement on the filed rate doctrine. In

*Central Office,* the plaintiff, a reseller of long-distance service, sued the defendant, a provider of long-distance services, under state law for breach of contract and tortious interference with contract, alleging that the defendant promised the plaintiff special promotional discounts and services not available to other customers in exchange for a four-year contract. *Id.* at 216–19, 118 *S.Ct.* at 1959–61, 141 *L.Ed.*2d at 229–31. When the defendant failed to deliver the promised services, the plaintiff sued. *Id.* at 219–20, 118 *S.Ct.* at 1961, 141 *L.Ed.*2d at 231–32. A jury verdict in favor of the plaintiff was upheld by the Court of Appeals, but the United States Supreme Court reversed. *Id.* at 221, 118 *S.Ct.* at 1962, 141 *L.Ed.*2d at 232.

The Supreme Court held that the enforcement of the judgment against the defendant would contravene the filed rate doctrine because it would grant the plaintiff a preference in service and rates not afforded to other customers and not included in the published tariffs. *Id.* at 224–26, 118 *S.Ct.* at 1963–65, 141 *L.Ed.*2d at 234–35. Further, the majority noted: "[E]ven if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff." *Id.* at 222, 118 *S.Ct.* at 1963, 141 *L.Ed.*2d at 233. *See also Knipmeyer v. Bell Atlantic,* 51 *Pa. D. & C.4th* 225, 230 (2001) (citing *Central Office* for proposition that under filed rate doctrine, customers are charged with notice of filed tariffs and customers and utilities must abide by tariffs even if carrier intentionally misrepresents its rates and customer relied on misrepresentations).

 In sum, the filed rate doctrine bars money damages from telecommunication carriers where the damage claims are premised on state contract principles, consumer fraud, or other bases on which plaintiffs seek to enforce a rate other than the filed rate. *See, e.g., Marcus v. AT & T Corp.,* 138 *F.*3d 46, 51, 60–61 (2d Cir.1998) (finding filed rate doctrine barred claim for damages where plaintiff challenged defendant's practice of "rounding up" because, although it was disclosed in filed rate, practice was not

referenced in advertising); *Wegoland, supra,* 27 *F.*3d at 21–22 (finding no fraud exception to filed rate doctrine, reasoning that doctrine insulates from challenge filed rates deemed reasonable by regulatory agency); *Kanuco Tech. Corp. v. Worldcom Network Servs., Inc.,* 979 *S.W.*2d 368, 374 (Tex.Ct.App.1998) (holding that filed rate doctrine barred defendant's counterclaim for violation of state's Deceptive Trade Practices Act); *Porr, supra,* 660 *N.Y.S.2d* at 442 (stating that customer's claim seeking relief for injury allegedly caused by payment of rate on file with regulatory commission actually is attack on rate approved by regulatory commission and, thus, is barred by filed rate doctrine, notwithstanding that tariff did not expressly indicate practice of rounding up for fractions of minute). *Cf. Tenore v. AT & T Wireless Servs.,* 136 *Wash.*2d 322, 962 *P.*2d 104, 109–110 (Wash.1998), *cert. denied,* 525 *U.S.* 1171, 119 *S.Ct.* 1096, 143 *L.Ed.*2d 95 (1999) (finding filed rate doctrine inapplicable where defendant wireless carrier was not required to file tariff).

### III.

█ The filed rate doctrine precludes plaintiff's claim of loss under the Act because he cannot recover monetary damages when he paid a rate that was consistent with defendant's approved filed tariff. Before 1996, defendant's FCC tariff filing revealed that it billed in "per minute" increments. Beginning in 1996, defendant's NJBPU filing reflected further that "each fractional minute is rounded up to the next minute." Also, as the courts below correctly concluded, plaintiff's fraud claim is barred because the filed rate doctrine requires the conclusive presumption that plaintiff knew the filed rate.

Further, we are persuaded that no reasonable consumer would have been deceived into believing that he or she was being billed by the second when the minimum charge on his or her monthly statements for residential telephone service was a charge for a full minute. Common sense should have informed plaintiff that the charge for calls lasting less than one minute had been rounded up.

Thus, even though defendant's description of its rates to its prospective customers could have been clearer, any customer would have had to know that he or she was having each call rounded up to a full minute charge once the first bill arrived.

In concluding that plaintiff's arguments do not prevent application of the filed rate doctrine, two out-of-state cases are illuminating in their similarity. In *Mobley v. AT & T Corp.,* 717 *So.*2d 367 (Ala.1998), the plaintiffs, long-distance customers, filed an action against the defendant, a telephone company, alleging that the company fraudulently misrepresented its billing practices and suppressed the fact that it rounded up to the next minute its charges for long-distance telephone calls. *Id.* at 367–68. The defendant disclosed in its tariffs that "[a]dditional rates apply to each additional period, or any fraction thereof." *Id.* at 368.

The Alabama Supreme Court affirmed the lower court's judgment on the pleadings in favor of defendants. *Id.* at 369. The court found that the tariffs filed for the relevant periods stated that charges would accrue for each minute "or any fraction thereof" that a call continues and, according to the filed rate doctrine, the customer's knowledge of the rates are "conclusively presumed." *Id.* at 368 (citing *Kansas City S. Ry., supra,* 227 *U.S.* at 653, 33 *S.Ct.* at 395, 57 *L.Ed.* at 688). As here, the plaintiffs had argued that the filed rate doctrine did not bar their claims because they were not challenging the rates; rather, they contended that if the practice of rounding up was disclosed they could have purchased their long-distance service from another provider that charged in increments of less than one minute. *Ibid.* That argument was rejected. The court relied on the conclusive presumption that plaintiffs knew of the filed rates and that knowledge barred their claims. *Ibid.* In so holding, the court also noted: "[N]o reasonable consumer would have been deceived into believing that he was being billed by the second, when his monthly statements contained no charges for calls of less than a full minute, and when common sense told him that a call of less than

one minute was not free." *Ibid.* (quoting *Porr, supra,* 660 *N.Y.S.*2d at 447).

Similarly, in *Emperor, supra,* 727 *So.*2d at 41, AT & T, a telecommunications provider, represented that if Emperor, a business customer, switched its long-distance service to AT & T, then Emperor would receive substantial savings on its long-distance bill. *Ibid.* Based on those representations, Emperor agreed to use at least $72,000 in long-distance service over the thirty-six month life of the contract. *Ibid.* When Emperor discovered that it actually was paying more for long-distance service than it had paid before, it terminated the contract. *Ibid.* AT & T sued, seeking the balance remaining under the contract, and Emperor counterclaimed, arguing that AT & T either had breached the contract or had procured the contract by fraud. *Ibid.*

The Alabama Supreme Court affirmed the award of summary judgment to AT & T because "[u]nder the filed rate doctrine, a customer of the regulated service is conclusively presumed to have notice of the contents of the tariff and may not claim that it is entitled to any rate other than the rate contained in the tariff." *Id.* at 42. In so holding, the court noted that Emperor did not claim that the rate actually charged by AT & T exceeded the applicable rate stated in AT & T's filed tariff. *Ibid.* Rather, Emperor's counterclaim alleged false representations (that Emperor would save money if it switched to AT & T) and the court found that such a claim was barred by the filed rate doctrine. *Ibid.* (citing *Central Office, supra,* 524 *U.S.* at 214, 118 *S.Ct.* at 1956, 141 *L.Ed.*2d at 222; *Mobley, supra,* 717 *So.*2d at 367).

■ As in *Emperor,* plaintiff here has not established that the rate actually charged by defendant exceeded the applicable rate stated in the filed tariff. "A common carrier may charge no more and no less than its filed rate. From that rule, it follows that any subscriber who pays the filed rate *has suffered no legally cognizable injury* because the rate is *per se* reasonable." *Hardy v. Claircom Communications Group, Inc.* 86 *Wash.App.* 488, 937 *P.*2d 1128, 1131–32 (Wash.Ct.App.1997) (citation omitted) (empha-

sis added). Plaintiff may not have his rate reduced by recalculation on a per-second basis. That would be discriminatory under the doctrine. Plaintiff simply has no claim for monetary damages because he was charged the per-minute rate disclosed in the tariff.

Although the filed rate doctrine may bar monetary relief, it does not by its terms bar prospective injunctive relief. There is a distinction between the doctrine's impact on a claim for monetary damages and one for injunctive relief. *Day v. AT & T Corp.*, 63 *Cal.App.*4th 325, 74 *Cal.Rptr.*2d 55, 63 (Cal.Ct.App.1998) (noting that although plaintiffs may seek injunction, they may not seek monetary relief because net effect of monetary sanction would result in discriminatory rates barred by filed rate doctrine); *Marcus, supra*, 138 *F*.3d at 62 (noting that in contrast to damage claim, injunctive claim would neither entangle court in rate-making process, nor undermine FCC's regulatory authority). That brings us to the penultimate issue in this case: whether a private plaintiff, who is unable to defeat a defendant's motion for summary judgment by demonstrating a material factual dispute concerning ascertainable loss, may nonetheless proceed with a claim for injunctive relief under the Consumer Fraud Act. If he or she cannot, the fact that the claim for injunctive relief against a long-distance telecommunications carrier is not barred by the filed rate doctrine is of no moment.

## IV.

The Legislature enacted the Consumer Fraud Act in 1960, vesting the Attorney General with the authority "to combat the increasingly widespread practice of defrauding the consumer." *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 14, 647 *A*.2d 454 (1994) (citing Senate Committee, *Statement to the Senate Bill No. 199* (1960)). *See also Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 *N.J.* 255, 264, 696 *A*.2d 546 (1997) (noting that Act grants Attorney General various powers to accomplish its objectives).

"As originally enacted, the Act was *exclusively* enforced by the Attorney General, who was provided with broad powers to investi-

gate, *N.J.S.A.* 56:8–3, subpoena records, *N.J.S.A.* 56:8–5, and seek injunctions prohibiting fraudulent conduct and orders of restitution to make whole any person damaged by conduct violating the Act, *N.J.S.A.* 56:8–8." *Meshinsky, supra,* 110 *N.J.* at 472–73, 541 *A.*2d 1063 (emphasis added). The Act also granted the Attorney General the power to investigate consumer-fraud complaints, to set forth rules and regulations that have the force of law, *N.J.S.A.* 56:8–4, and to issue cease and desist orders and to impose penalties for violations of such orders, *N.J.S.A.* 56:8–18. Other statutory provisions reinforce the Attorney General's broad authority and further define his powers under the Act. See *N.J.S.A.* 56:8–6 (setting forth Attorney General's powers under circumstances in which person fails to file statement or obey subpoena); *N.J.S.A.* 56:8–15 (authorizing restoration of moneys or property in addition to imposition of civil penalties); *N.J.S.A.* 56:8–16 (stating Attorney General may provide for remission of all or part of such penalty conditioned "upon prompt compliance with the requirements thereof and any order entered thereunder"); *N.J.S.A.* 56:8–17 (establishing that upon person's failure to pay penalty or restore money or property, Attorney General may "issue certificate to Clerk of Superior Court that such person is indebted to the State for the payment of such penalty and moneys or property ordered restored" and that such entry has same force and effect as docketed judgment). Since 1967, the Attorney General has exercised his powers and duties through an Office of Consumer Protection. *N.J.S.A.* 52:17B–5.7.

More than a decade after the Act was passed, it was amended to permit individual consumers to bring private actions to recover refunds, *N.J.S.A.* 56:8–2.11 to –2.12, and treble damages for violations, *N.J.S.A.* 56:8–19. *Lemelledo, supra,* 150 *N.J.* at 264, 696 *A.*2d 546. *See also Riley v. New Rapids Carpet Ctr.,* 61 *N.J.* 218, 226, 294 *A.*2d 7 (1972) (stating that "private class action must be accepted if the objectives [of the Act] are to be realized"). In Governor Cahill's press release regarding the 1971 amendment, he noted that the amendment "provide[s] easier access to the courts for the consumer, . . . increase[s] the attractiveness of consumer

actions to attorneys[,] and ... reduce[s] the burdens on the Division of Consumer Affairs." *Governor's Press Release for Assembly Bill,* No. 2402, at 2 (Apr. 19, 1971). *See also Skeer v. EMK Motors, Inc.,* 187 *N.J.Super.* 465, 471–73, 455 *A.*2d 508 (App.Div.1982) (examining legislative history of Act).

The addition of a private cause of action, by a person who suffers a loss due to a violation of the Act, promoted several purposes. It created an efficient mechanism to: (1) compensate the victim for his or her actual loss; (2) punish the wrongdoer through the award of treble damages; and (3) attract competent counsel to counteract the "community scourge" of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual. *Lettenmaier v. Lube Connection, Inc.,* 162 *N.J.* 134, 139, 741 *A.*2d 591 (1999) (citations omitted). *See also Scibek v. Longette,* 339 *N.J.Super.* 72, 77–78, 770 *A.*2d 1242 (App.Div.2001) (examining purposes of Act).

The Act focuses on allowing individual consumers to recover refunds for losses caused by violations of the Act, *N.J.S.A.* 56:8–2.11 to –2.12. *N.J.S.A.* 56:8–2.11 states: "Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful." *N.J.S.A.* 56:8–2.12 states: "The refund of moneys provided may be recovered in a private action or by such persons authorized to initiate actions pursuant to P.L.1975, c. 376." *See also N.J.S.A.* 56:8–19 (stating that "[a]ny person who suffers any ascertainable loss ... may bring an action or assert a counterclaim"). The prospect of treble damages serves as an incentive to bring a wrongdoer to justice. *Ibid.*

 The Act creates a private cause of action, but only for victims of consumer fraud who have suffered an ascertainable loss. *Meshinsky, supra,* 110 *N.J.* at 473, 541 *A.*2d 1063. *N.J.S.A.* 56:8–19 states:

*Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method,*

act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor[e] in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

[ (emphasis added).]

The express language of the statute requires a private party to have a claim that he or she has suffered an ascertainable loss of money or property in order to bring a cause of action under the Act. In effect, the Act permits only the Attorney General to bring actions for purely injunctive relief. This Court has considered the statutory language and has held that, in contrast to the Attorney General, a private plaintiff must have an ascertainable loss in order to bring an action under the Act. *Meshinsky, supra,* 110 *N.J.* at 473, 541 *A.*2d 1063 (citing *Daaleman v. Elizabethtown Gas Co.,* 77 *N.J.* 267, 271, 390 *A.*2d 566 (1978) (interpreting *N.J.S.A.* 56:8–19 as allowing private party to bring action if he or she "suffers a loss due to a method, act[,] or practice declared unlawful under the [A]ct, to sue and recover threefold the damages sustained, together with reasonable attorney's fees and costs of suit"), and *Ramanadham v. New Jersey Mfrs. Ins. Co.,* 188 *N.J.Super.* 30, 33, 455 *A.*2d 1134 (App.Div.1982) (holding that Act requires causal relationship between ascertainable loss and unlawful practice and remanding case for new trial to establish "the extent of any ascertainable loss, particularly proximate to a misrepresentation or other unlawful act of the defendant condemned by the Consumer Fraud Act")).

It is fundamental that "the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms." *Russell v. Saddle Brook Rest. Corp.,* 199 *N.J.Super.* 186, 188, 488 *A.*2d 1068 (App.Div.1985) (quoting *Sheeran v. Nationwide Mut. Ins. Co.,* 80 *N.J.* 548, 556, 404 *A.*2d 625

(1979)). It is also our function to give words their common sense meaning and, in doing so, to construe a statute sensibly to achieve the legislative aims. *N.E.R.I. Corp. v. N.J. Highway Auth.*, 147 *N.J.* 223, 236, 686 *A.2d* 328 (1996) (citations omitted). We have interpreted the New Jersey Consumer Fraud Act broadly in the past to accomplish its remedial purposes. *Lemelledo, supra,* 150 *N.J.* at 264, 696 *A.2d* 546 (citing *Barry v. Arrow Pontiac,* 100 *N.J.* 57, 69, 494 *A.2d* 804 (1985)). Yet, as we have previously held, *Meshinsky, supra,* 110 *N.J.* at 473, 541 *A.2d* 1063, the plain language of the Act unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action. It is incumbent on this Court to construe and apply that language in a manner that furthers the legislative intent to allow certain private causes of action, and that does not frustrate the legislative choice in limiting such actions to those individuals whose claims are based on assertions of ascertainable loss.

To say that a plaintiff must present a claim of ascertainable loss to have standing under the Act does not require that the claim ultimately prove successful. A claim may be unsuccessful for any number of reasons even though it was brought in good faith and has support in the facts. Requiring a plaintiff ultimately to prove an ascertainable loss in order to obtain injunctive relief is too difficult a standard and would deter, rather than encourage, private causes of action, in contravention of the legislative scheme. Thus, although we perceive a claim of ascertainable loss to be an essential element for a private cause of action under the Act, that does not mean that only a plaintiff who successfully proves ascertainable loss may have access to the Act's remedies of equitable relief and attorneys' fees.

This Court's opinion in *Cox,* in *dictum,* discussed a private plaintiff's ability to pursue an action, notwithstanding the absence of ascertainable loss. 138 *N.J.* at 24–25, 647 *A.2d* 454. In *Cox,* the plaintiff, a homeowner, brought an action against the defendant, Sears, in connection with a contract for home improvements.

*Id.* at 7, 647 *A.*2d 454. The plaintiff entered into a home improvement contract with the defendant and financed the entire cost of the renovations on his Sears credit card. *Ibid.* Subsequently, the plaintiff agreed that the defendant would rewire and update the electrical work for an additional cost. *Id.* at 8, 647 *A.*2d 454. The plaintiff, dissatisfied with the renovations, filed suit alleging, among other things, breach of contract and violations of the Act. *Id.* at 7, 647 *A.*2d 454. Although the jury found for the plaintiff on both the contract and consumer fraud causes of actions, the trial court entered judgment in favor of the defendant notwithstanding the verdict. *Ibid.*

The Appellate Division affirmed, finding that the plaintiff failed to establish that the defendant's conduct violated the Act and failed to demonstrate any loss entitling him to damages. *Ibid.* We reversed, reasoning that the defendant engaged in an unlawful practice under the Consumer Fraud Act because it failed to comply with the regulatory provisions governing home improvements, and that, under *N.J.S.A.* 56:8–19, the plaintiff adequately demonstrated ascertainable loss. *Id.* at 22–23, 647 *A.*2d 454. The plaintiff's loss was measured by the cost of repairing the defendant's errors. *Id.* at 23, 647 *A.*2d 454. Thus, the plaintiff, having suffered an ascertainable loss, was entitled to treble damages, attorneys' fees, filing fees, and court costs. *Id.* at 25, 647 *A.*2d 454.

In *Cox*, we reaffirmed the statutory distinction between actions that may be brought by the Attorney General and those that may be brought by a private party. *Id.* at 21, 647 *A.*2d 454. Although we found that the plaintiff adequately demonstrated ascertainable loss under the Act and addressed all issues necessary to our decision, we further observed that even if the plaintiff is not successful in proving to the factfinder the existence of ascertainable loss, and thus is unable to recover treble damages, the plaintiff can recover reasonable attorneys' fees and costs if he can prove that the defendant committed an unlawful practice. *Id.* at

24–25, 647 *A.*2d 454 (citing *Performance Leasing Corp. v. Irwin Lincoln–Mercury,* 262 *N.J.Super.* 23, 33–34, 619 *A.*2d 1024 (App. Div.1993) (holding that where jury found that defendant violated the Act but that plaintiff had not proven damages, plaintiff nonetheless may be awarded fees) *certif. denied,* 133 *N.J.* 443, 627 *A.*2d 1148 (1993)). Thus, in *Cox* we suggested that a plaintiff who reaches the factfinder on a claim of ascertainable loss and succeeds in proving an unlawful practice but does not succeed in proving damages, should be eligible nonetheless to recover attorneys' fees for bringing the action.

■ The question now squarely before us is whether a plaintiff, who pleads but cannot survive a motion for summary judgment in respect of the issue of ascertainable loss, may proceed with remaining claims for injunctive relief and attorney's fees under the Act. We hold that that plaintiff cannot go forward.

■ Read sensibly, the statute allows a private cause of action to proceed for all available remedies, including an injunction, whenever a consumer can plead a claim of ascertainable loss that can survive a motion for summary judgment. The legislative intent to permit a private cause of action under the Act would be frustrated if a private litigant, who succeeds in·bringing such a claim to a jury, must gamble on whether he or she will prevail ultimately on proof of the loss in order to obtain attorneys' fees, when he or she otherwise proves unlawful conduct.

■ Thus understood, the plaintiff with a *bona fide* claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder would be entitled to seek also injunctive relief when appropriate, and to receive an award of attorneys' fees, even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act. The Act's remedial purposes are promoted thereby and the Legislature's requirement of ascertainable loss for a private cause of action is respected.

Such actions by consumers affected by the unconscionable act of consumer fraud will lessen the burden on the Attorney General. The standard we articulate today furthers the legislative desire to recognize two classes of actions cognizable under the Act. To eliminate entirely the predicate of a *bona fide* claim of ascertainable loss would be violative of the legislative prerogative to give standing only to those private parties who present a legitimate claim of damages.

In this action, plaintiff failed to present such a claim of ascertainable loss because operation of the filed rate doctrine precluded him from any claim to monetary damages. He was charged the rate in defendant's filed tariff. He had no lawful claim to have been charged any other rate and could present no genuine issue of fact on his assertion of loss. We hold that the courts below correctly dismissed his claim for compensatory damages under the Act. Plaintiff may not proceed solely on his claims for injunctive relief and attorneys' fees. Accordingly, his remaining claims properly were dismissed.

## V.

The judgment of the Appellate Division is affirmed.

VERNIERO, J., dissenting.

My difference with the majority is a narrow one. I would not rely on a legal fiction known as the "filed rate doctrine" to dismiss plaintiff's consumer protection claims. I also believe that the public policy behind the Consumer Fraud Act (Act) argues in favor of allowing those claims to proceed to trial.

My rationale for not applying the filed rate doctrine is twofold. First, Sprint should not be permitted to benefit from the protections of that doctrine given the content of its filed tariffs that

existed at the time of the litigation. In that respect, as the Court properly acknowledges, Sprint rounded "up to the next minute," *ante* at 238, 801 *A.*2d at 284, notwithstanding that the rate that it filed with the Federal Communications Commission (FCC) "did not explicitly disclose [that] practice[.]" *Ibid.* The Court also observes that Sprint's description of its rates "could have been clearer[.]" *Id.* at 245, 801 *A.*2d at 288. Thus, the cases cited by the majority, in which the defendants actually *did* disclose rounding up in their filed tariffs, are inapposite. *See, e.g., Marcus v. AT & T Corp.,* 138 *F.*3d 46, 57 (2d Cir.1998) (involving filed rate that stated, "Additional Minute rates apply to each additional minute, *or any fraction thereof*") (emphasis in original); *Mobley v. AT & T Corp.,* 717 *So.*2d 367, 368 (Ala.1998) (same); *Hardy v. Claircom Communications Group, Inc.,* 86 *Wash.App.* 488, 937 *P.*2d 1128, 1132 (Wash.Ct.App.1997) (involving "tariff [that] expressly state[d] that charges are measured in whole minutes with fractions rounded to the next highest minute"). *But see Porr v. NYNEX Corp.,* 230 *A.D.*2d 564, 660 *N.Y.S.*2d 440, 442 (N.Y.App.Div.1997) (holding that filed rate doctrine precluded consumer's claims in case in which plaintiff alleged that defendant failed to disclose rounding up in its filed rates).

Second, I would not apply a legal fiction whose days, according to some courts, are numbered. I recognize that for close to one hundred years, the filed rate doctrine has served to protect communications companies from suit, even in the face of fraud. See Charles H. Helein, Jonathan S. Marashlian, Loubna W. Haddad, *Detariffing and the Death of the Filed Tariff Doctrine: Deregulating in the "Self" Interest,* 54 *Fed. Comm. L.J.* 281, 289–93 (2002) (reviewing early history and principles of filed rate doctrine). The doctrine's future, however, is dim at best. See *MCI WorldCom, Inc. v. Fed. Communications Comm'n,* 209 *F.*3d 760, 765 (D.C.Cir.2000) (observing that FCC no longer accepts filed rates by long-distance carriers because, in part, FCC is "wary that the filed-rate doctrine might be interpreted by state

and federal courts to interfere with free-market behavior"); *Fax Telecommunicaciones Inc. v. AT & T,* 138 *F.*3d 479, 491 (2d Cir.1998) (explaining that, although filed rate doctrine once served valid public policy purposes, doctrine "is plainly a creature of a different time"); *Emperor Clock Co. v. AT & T Corp.,* 727 *So.*2d 41, 42 (Ala.1998) (noting argument that recent changes in communications laws may have "effectively repealed the filed-rate doctrine"); Helein, Marashlian, Haddad, *supra,* 54 *Fed. Comm. L.J.* at 283–84 (indicating that FCC announced that "carriers may no longer rely on the Filed Tariff Doctrine[,]" and "chief effect of [that] announcement, expressly encouraged by the FCC, is to open the carrier-customer relationship to the scrutiny of state authorities, like the State Attorneys General *and state consumer-protection laws* ") (footnote omitted) (emphasis added).

Absent the filed rate doctrine, plaintiff likely has incurred an ascertainable loss, or at least is entitled to prove such a loss at trial. Plaintiff alleges that rounded-up rates are more expensive than sub-minute billing and that New Jersey consumers have paid "excess charges" as a result. He further asserts that contrary to Sprint's practices, other phone companies were offering sub-minute billing at the time of this litigation. Had New Jersey consumers known of those other options, they may have purchased their long-distance services elsewhere. Thus, in addition to the excess charges incurred by using Sprint in the first instance, consumers may have suffered a continuing opportunity cost by remaining with Sprint rather than using another phone company. The Court dismisses plaintiff's presentation of advertisements from other phone companies, saying in essence that plaintiff has not shown that he actually could have taken advantage of those rates. *Ante* at 238–39, 801 *A.*2d at 284. That, however, is a jury question in my view. Given the procedural posture of this case the Court should not dismiss plaintiff's contentions on that basis. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995).

Lastly, the Act has been hailed as "one of the strongest consumer protection laws in the nation[.]" *Governor's Press Release for Assembly Bill No. 2402*, at 1 (June 29, 1971). "The history of the Act is one of constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors*, 148 *N.J.* 582, 604, 691 *A.2d* 350 (1997). The Act is remedial in nature and, for that reason, "[c]ourts have emphasized that like most remedial legislation, the Act should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 15, 647 *A.2d* 454 (1994). When assessing individual claims, courts must remain "mindful that the Act's provision authorizing consumers to bring their own private action is integral to fulfilling the [statute's] legislative purposes[.]" *Id.* at 16, 647 *A.2d* 454. In sum, allowing plaintiff's claim to proceed would be consistent with the Act's uninterrupted history of expanding consumer protection in these circumstances.

I respectfully dissent.

Justices STEIN and ZAZZALI join in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, LONG and LaVECCHIA—4.

*For reversal*—Justices STEIN, VERNIERO and ZAZZALI—3.