**PAETEC COMMUNICATIONS, INC., et al.**

v.

**MCI COMMUNICATIONS SERVICES, INC. d/b/a Verizon Business Services, et al.**

**Civil Action No. 09–1639.**

United States District Court, E.D. Pennsylvania.

May 9, 2011.

Scott H. Angstreich, Kiran S. Raj, Kellogg Huber Hansen Todd, Evans & Figel PLLC, Washington, DC, for MCI Communications Services, Inc., Verizon Global Networks, Inc.

Alexis Arena, Flaster/Greenberg P.C., Philadelphia, PA, Darren H. Goldstein, Donna T. Urban, Flaster/Greenberg P.C., Cherry Hill, NJ, for Paetec Communications of Virginia, Inc., U.S. LEC Communications, Inc. d/b/a Paetec Business Services, U.S. LEC of Alabama LLC d/b/a Paetec Business Services, U.S. LEC of Florida LLC d/b/a Paetec Business Services, U.S. LEC of Georgia LLC d/b/a Paetec Business Services, U.S. LEC of Maryland LLC d/b/a Paetec Business Services, U.S. LEC of North Carolina Inc. d/b/a Paetec Business Services, U.S. LEC of Pennsylvania LLC d/b/a Paetec Business Services U.S. LEC of South Carolina

LLC d/b/a Paetec Business Services, U.S. LEC of Tennessee Inc. d/b/a Paetec Business Services, U.S. LEC of Virginia LLC d/b/a Paetec Business Services.

A. Richard Feldman, Bazelon Less & Feldman PC, Philadelphia, PA, for MCI Communications Services, Inc.

## ORDER

STEWART DALZELL, District Judge.

AND NOW, this 9th day of May, 2011, upon consideration of defendants and counterclaim plaintiffs MCI Communications Services, Inc., d/b/a Verizon Business Services and Verizon Global Networks, Inc.'s (collectively, "Verizon") response to our October 14, 2010 Order to Show Cause ("Verizon Mem.") (docket entry # 44), plaintiffs and counterclaim defendants'[1] response to our October 14, 2010 Order ("PAETEC Mem.") (docket entry # 45), Verizon's motion for leave to file a supplemental declaration ("Verizon Resp.") (docket entry # 46), PAETEC's cross-motion for leave to file a responsive supplemental declaration, and memorandum of law in response to Verizon's motion for leave to file a supplemental declaration and in support of PAETEC's cross-motion for leave to file a responsive supplemental declaration ("PAETEC Resp.") (docket entry # 47), and the Court finding that:

(a) This case involves PAETEC's efforts to collect on its interstate switched access charges; the first four counts of PAETEC's complaint sought rulings requiring Verizon to pay amounts it had to date refused to pay; the final count sought a declaratory judgment that PAETEC had lawfully assessed and may continue to assess the switched access charges at issue;

(b) Verizon filed counterclaims that sought a ruling that Verizon was not obligated to pay the amounts it had withheld and a declaratory judgment that PAETEC had not lawfully assessed, nor should it be allowed to continue to assess, interstate switched access charges under its federal tariff for work it does not perform and/or rates in excess of the maximum rate the FCC's rules permit PAETEC to include in its federal tariff;

(c) In our April 26, 2010 Memorandum and Order, reported at 712 F.Supp.2d 405 (E.D.Pa.2010), we held that (1) PAETEC's tariff is not void *ab initio*, (2) PAETEC's tariffed SWAS rates for all periods since August 2, 2006 complied with the Benchmark, (3) PAETEC's tariffed SWAS–DC rates for all periods since August 2, 2006 exceeded the Benchmark, (4) PAETECs SWAS–DC rates were not deemed lawful for the period beginning December 24, 2008,[2] (5) PAETEC is collaterally estopped from relying on the 90–day dispute notice provision in its tariff to bar Verizon's claims (and that provision is in any event ineffective), and (6) PAETECs voluntary payment doctrine claim lacked merit; we did not rule on PAETECs claim of quantum meruit, nor did we rule on the amount of damages due either party, leaving those decisions for another day after the completion of damages-related discovery;

(d) In our October 14, 2010 Order, we asked the parties to show cause whether

---

1. PAETEC Communications, Inc., PAETEC Communications of Virginia, Inc., U.S. LEC Communications Inc d/b/a PAETEC Business Services, U.S. LEC of Pennsylvania LLC d/b/a PAETEC Business Services, U.S. LEC of Virginia LLC d/b/a PAETEC Business Services, U.S. LEC of Maryland LLC d/b/a PAETEC Business Services, U.S. LEC of Alabama LLC d/b/a PAETEC Business Services, U.S. LEC of Georgia LLC d/b/a PAETEC Business Ser- vices, U.S. LEC of South Carolina d/b/a PAETEC Business Services, and U.S. LEC of Tennessee Inc. d/b/a PAETEC Business Services (collectively, "PAETEC").

2. PAETEC amended the SWAS and SWAS–DC rates in its federal switched access tariff effective July, 2010 in light of our April 26, 2010 ruling.

(1) there is any just reason for delay of the entry of Judgment as to the aspects that we decided in our April 26, 2010 Memorandum, and (2) we should refer the two remaining issues as defined in our April 26, 2010 Memorandum to the Federal Communications Commission ("FCC") for resolution, *PAETEC Communications, Inc. v. MCI Communications Services, Inc.*, C.A. No. 09–1639, Order to Show Cause (E.D.Pa. Oct. 14, 2010);

(e) We defined the two remaining issues as

(1) whether the FCC has clearly stated how mandatory detariffing applies to CLECs that have charged above the Benchmark rate, whether this requires an invalidation of the entire tariff at issue or merely exposes CLECs to refund liability, and whether, if the FCC has not squarely addressed this issue, it should be referred to the FCC's original jurisdiction, and (2) whether Verizon's claims for overcharges from the periods between August 2, 2006 and April 17, 2007 are barred by the statute of limitations.

*PAETEC Communications, Inc. v. MCI Communications Services, Inc.*, 712 F.Supp.2d 405, 421 (E.D.Pa.2010);

(f) In their memoranda to show cause, the parties agree that the remaining issues need not be referred to the FCC's original jurisdiction, Verizon Mem. at 10–14; PAETEC Mem. at 5–16;

(g) The parties also agree that, because we ruled on the declaratory judgment claims, we should enter final judgment pursuant to Fed.R.Civ.P. 54(b) with regard to those claims so that this matter may proceed efficiently to appeal, Verizon Mem. at 4; PAETEC Mem. at 20;

(h) PAETEC notes in its memorandum that "if the Third Circuit were to conclude

that PAETEC's SWAS–DC rate complied with the Benchmark that would obviate the need to refer any issues to the FCC. Moreover, the Benchmark issues relating to both SWAS and SWAS–DC ought to be considered together on appeal since they both arise from the same body of statutory and FCC authorities," PAETEC Mem. at 20;

(i) Thus, we need only untangle the matter of mandatory detariffing to enter final judgment on the declaratory judgment claims;

(j) Verizon argues that mandatory detariffing means that because PAETEC filed its tariff on November 8, 2008 in violation of the FCC's prohibition on filing tariffs with rates in excess of the Benchmark, there was no tariff or contract in place that could compel Verizon to pay for SWAS–DC service, *id.* at 11; thus, Verizon contends that, because PAETECs tariff was in excess of the Benchmark, this requires us to invalidate the tariffed SWAS–DC rates from November 8, 2008 through July 16, 2010 (and that Verizon does not have to pay for SWAS–DC service during that time), *id.* at 12;

(k) Verizon seems to suggest that the FCC's mandatory detariffing rule automatically renders any tariff filed above the Benchmark ineffective and not entitled to "deemed lawful" protection; but although Verizon cites case law and FCC reports that show that the FCC forbids CLECs from filing tariffs above the Benchmark, it cites no authority that gives guidance regarding what a Court should do when a CLEC *does* file a tariff above the Benchmark; nor does Verizon cite any examples of occasions where a CLEC filed a tariff above the Benchmark rate and a Court—as opposed to the FCC—found that the tariff in question was automatically rendered ineffective [3]; the parties agree that

---

3. Verizon also does not cite any instances of

the FCC finding that a tariff was automatical-

mandatory detariffing forbids CLECs from filing tariffs in excess of the Benchmark, but the parties vehemently disagree as to what a Court should do if a CLEC files a tariff in excess of the Benchmark, and whether that CLEC is entitled to "deemed lawful" protection;

(1) Thus, having found PAETEC's filed SWAS–DC tariffs to be above the Benchmark and therefore unreasonable, the question before us now is what is the correct course of action for a Court to take, and how does the FCC's mandatory detariffing policy interact with "deemed lawful" protection?;

(m) PAETEC argues that tariffs filed in compliance with § 204(a)(3) of the Telecommunications Act are "deemed lawful" even if they are above the Benchmark;

(n) PAETEC contends that "mandatory detariffing" is "but one form of the FCC's exercise of its authority to 'forbear' from enforcing or applying any regulation or Communications Act provision upon making the determinations required by 47 U.S.C. § 160," PAETEC Mem. at 10;

■ (o) Mandatory detariffing gives the FCC the authority to forbid carriers from filing tariffs and to require them to cancel existing tariffs, *MCI Telecommunications Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994);

(p) Verizon argues that 47 U.S.C. § 203(c) prohibits a carrier from "charg[ing], demand[ing], collect[ing], or receiv[ing] a greater" amount than the rate in its filed tariff, Verizon Mem. at 13; Verizon claims that nothing in the "deemed lawful" provision, or any FCC or court decision construing it, allows a carri-

er to use the fact that it filed a tariff under 47 U.S.C. § 204(a)(3) to insulate itself from liability for charging a rate in excess of its tariffed rate, *id.*; Verizon contends instead that "deemed lawful" is a defense to refund liability where the carrier has charged its tariffed rate but the tariff itself was found unlawful, *id.*; Verizon concludes by noting that our finding that PAETEC, for a period prior to November 8, 2008, charged higher rates than its tariff permitted was not a finding that PAETEC's tariff was unlawful and therefore "deemed lawful" is irrelevant, *id.*;

(q) PAETEC argues that if the FCC intended to forbear from enforcing or applying 47 U.S.C. § 204(a)(3)'s "deemed lawful" status for any tariffed rates that were later found to have exceeded the Benchmark, it could have done so; because the FCC has never stated that it intended to render ineffective a carrier's tariffed rates' "deemed lawful" status because the rate was later found to be unreasonable or above the Benchmark, PAETEC argues that we may not now strip their August 2, 2006 to December 24, 2008 SWAS–DC tariffs of their "deemed lawful" status; and that although we found their filed SWAS–DC tariffs to be above the Benchmark beginning on November 8, 2008, the FCC's regulations do not require us to render the tariff automatically ineffective, PAETEC Mem. at 10–11;

(r) In fact, in *In the Matter of Petition of ACS of Anchorage, Inc.*, 22 F.C.C.R. 16304, 16331 (August 20, 2007), the FCC capped the switched access rates of ACS (an ILEC) at the CLEC Benchmark rate, effectively subjecting ACS to the same mandatory detariffing regime that applies

ly ineffective as a result of mandatory detariffing either. Verizon does refer to *MCI WorldCom, Inc. v. Fed. Communications Comm.*, 209 F.3d 760, 764 (D.C.Cir.2000), but in that case the Court of Appeals discussed the man-

datory and permissive detariffing regimes as they applied to the FCC's determinations regarding interexchange carriers, not local exchange carriers.

to CLECs; but the FCC specifically ruled that deemed lawful status would still be available to ACS's rates, notwithstanding that its rates are capped at the Benchmark rate, *id.* at 16332 ("Deemed lawful status is available to all LECs, including Competitive LECs, that meet the requirements of Section 204(a)(3) of the Act, and GCI has shown no reason why deemed lawful status should not apply in the case of ACS.");

■ (s) Thus, we find that this inquiry has clarified the issue of mandatory detariffing as we defined it in our April 26, 2010 Memorandum, and we now hold that PAE-TECs SWAS–DC rates, although being either unreasonable or above the Benchmark (or both) between August 2, 2006 and December 24, 2008, are nevertheless protected by their "deemed lawful" status under § 204(a)(3), and therefore Verizon is not entitled to a refund for PAETEC's SWAS–DC charges during that time;

(t) Verizon claims that during the parties' mediation sessions, PAETEC suggested that a third unresolved issue exists: whether "deemed lawful" is a defense to the Court's finding that PAETEC overcharged Verizon for SWAS–DC service prior to November 8, 2008, Verizon Mem. at 12; but as we have just canvassed, the issue of mandatory detariffing and "deemed lawful" status are intertwined in this context, and we could not have addressed one without addressing the other;

(u) With regard to PAETEC's unpaid SWAS charges, PAETEC argues that Verizon has withheld $8,533,216 for both SWAS and SWAS–DC, $4,351,940.46 of which is attributable to SWAS charges only, PAETEC Resp. at 8; Verizon argues that it has withheld only $3,863,594.73 in SWAS charges, Verizon Resp. at 2;

(v) PAETEC and Verizon have come to an unhappy agreement in an effort to move this case forward most efficiently— PAETEC agrees to accept Verizon's offer of $3,863,594.73 for the outstanding SWAS charges if it means that it will speed this matter along to our Court of Appeals;

(w) We left open the issue of whether Verizon's claims for a refund for SWAS–DC charges for the period August 2, 2006 to April 17, 2007 are barred by the statute of limitations; we noted that this depends upon whether Verizon adequately disputed the SWAS–DC charges in writing within two years; because we have now found that PAETEC's SWAS–DC charges during that period are protected by their "deemed lawful" status, we can deny Verizon's claim for a refund on those charges for that time period; thus, we need not consider whether Verizon's statute of limitations has run on those claims;

(x) We agree with Verizon that PAETEC argued issues in its brief, including the issue of "clawbacks," on which we did not seek briefing; we will not address those arguments here;

(y) We will now address whether we may enter a final judgment on some of the claims in this case without entering final judgment on others;

(z) Under Rule 54(b), where a suit involves multiple claims, a district court may enter final judgment on a subset of claims so long as there is "no just reason for delay," Fed.R.Civ.P. 54(b);

■ (aa) Deciding whether to enter final judgment pursuant to Rule 54(b) "involves two separate findings: (1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is 'no just reason for delay,'" *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 202 (3d Cir.2006);

■ (bb) With respect to the second step of the analysis, courts consider five factors:

(1) the relationship between the adjudicated and unadjudicated claims;

(2) the possibility that the need for review might or might not be mooted by future developments in the district court;

(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;

(4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 203;

■ (cc) We find that:

(1) there is a distinct and separate relationship between the adjudicated and unadjudicated claims because the unadjudicated claims focus on the amount of damages the parties are entitled to recover for past conduct, and the resolution of these issues will not affect our interpretation of the FCC's rules governing the rates a CLEC tariffs for interstate switched access service; although we will leave several claims unresolved, none affect the declaratory judgment claims, *see Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ("A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order.");

(2) the need for review will not be mooted by future developments before this Court; the primary question on appeal will be whether we correctly interpreted the FCC's Benchmark rules, and thus subsequent rulings on damages based on past invoices will not moot this issue, which goes to the lawfulness of PAETEC's tariffed rates;

(3) this is not a case where our Court of Appeals would be obliged to review the same issues a second time-even if later rulings on thus far unresolved issues were separately appealed, our Court of Appeals would not need to decide again the meaning of the FCC's rules or the question of whether PAETEC's tariffs complied with those rules;

(4) because there is no counterclaim that would result in a set-off against the declaratory judgment sought to be made final, the fourth factor is inapplicable here; and

(5) additional factors weigh in favor of entering judgment pursuant to Rule 54(b);

(dd) As to the fifth finding, we have decided an issue important to the telecommunications industry as a matter of first impression; entering final judgment pursuant to Rule 54(b) is particularly appropriate in such cases, *see, e.g., Pichler v. UNITE,* 646 F.Supp.2d 759, 765 (E.D.Pa. 2009) (explaining, on remand, that the Court had entered judgment pursuant to Rule 54(b) on several "novel questions that were issues of first impression" in our Court of Appeals); this ruling goes beyond the parties' individual dispute because the FCC regulations at issue govern all CLECs nationwide;

(ee) Because we held that PAETEC's SWAS charges comply with the Benchmark and its SWAS–DC rates do not, we have made a final judgment on the merits with regard to the declaratory judgment claims, and we find that there is no just reason for delay, *Berckeley,* 455 F.3d at 202; *see also U.S. Golf Ass'n v. St. Andrews Systems Data–Max, Inc.,* 749 F.2d 1028, 1031 n. 5 (3d Cir.1984) (upholding the finality of declaratory judgments "since the legal question presented . . . has been conclusively decided"); therefore, we have ordered "an ultimate disposition of" the declaratory judgment claims;

(ff) We may therefore enter a final judgment declaring that PAETEC's tariffed SWAS–DC rates were above the Benchmark and unreasonable to the extent that they were composed of both tandem switching and end office switching rate elements, but that the rate is protected by its "deemed lawful" status up to the filing of the December 24, 2008 tariff, which was not deemed lawful, and that PAETEC's tariffed SWAS rates were lawful and reasonable; we find therefore that Verizon must pay PAETEC for SWAS services in the agreed-upon amount of $3,863,594.73, and is not entitled to a refund for PAETEC's SWAS–DC services until December 24, 2008, at which point PAETEC failed to file its SWAS–DC tariff in compliance with § 204(a)(3);

■ (gg) With regard to the other issues we decided in our April 26, 2010 Memorandum and Order, but which may not fit conformably within the confines of a Rule 54(b) certification, we will also, in order to maximize the Court of Appeals' latitude to review our April 26, 2010 Order, certify both our April 26, 2010 Order and this Order for interlocutory appeal under 28 U.S.C. § 1292(b); under § 1292(b), our Court of Appeals' review "is not limited to the specific questions certified by the District Court. Rather, [it] may address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question[s] identified by the [D]istrict [C]ourt," *NVE, Inc. v. Dep't of Health and Human Services*, 436 F.3d 182, 196 (3d Cir.2006) (internal citations and quotation marks omitted);

(hh) Thus, we will enter a final judgment on the declaratory judgment claims, order Verizon to pay PAETEC $3,863,594.73 for the unpaid SWAS charges, and we will hold the rest of the case in abeyance pending our Court of Appeals' resolution of any appeal;

It is hereby ORDERED that:

1. The Court, finding no just reason for delay, SEVERS and ENTERS a Final Judgment with respect to the declaratory judgment claims;

2. Pursuant to 28 U.S.C. § 1292(b), we CERTIFY FOR APPEAL both our April 26, 2010 Order and this Order, which include our rulings that PAETEC's pre-November 2008 tariff was not void *ab initio*, that neither a dispute resolution provision in PAETEC's tariff nor the voluntary payment doctrine barred Verizon's claims, that Verizon's claims for the period prior to November 7, 2008 are subject to the statute of limitations in 47 U.S.C. § 415(c), that PAETEC's rates in effect since December 24, 2008 are not deemed lawful, and that PAETEC's SWAS–DC tariff filed prior to December 24, 2008 are deemed lawful;

3. Verizon shall PAY PAETEC $3,863,594.73 for unpaid SWAS charges only;

4. This Court DECLARES that PAETEC's SWAS–DC charges are "deemed lawful" and therefore are not subject to refund liability for charges levied between August 2, 2006 and December 24, 2008; and

5. The remaining claims are STAYED pending appellate review.