NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3485-14T3

DEBRA DUGAN, ALAN FOX, and
ROBERT CAMERON on behalf of
themselves and all other
similarly situated,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

TGI FRIDAYS, INC., CARLSON
RESTAURANTS WORLDWIDE, INC.,
on behalf of themselves and
all others similarly situated,

     Defendant-Appellant/
     Cross-Respondents.

<div style="border:1px solid black; display:inline-block; padding:8px; text-align:center;">

**APPROVED FOR PUBLICATION**

**March 24, 2016**

**APPELLATE DIVISION**

</div>

_____

Argued February 23, 2016 — Decided March 24, 2016

Before Judges Yannotti, Guadagno and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0126-10.

Stephen M. Orlofsky argued the cause for appellants/cross-respondents (Blank Rome, L.L.P., and LeClair Ryan, attorneys; Mr. Orlofsky, David C. Kistler, Jeffrey L. O'Hara, and Matthew S. Schultz, on the briefs).

Sander D. Friedman argued the cause for respondents/cross-appellants (Law Office of Sander D. Friedman, LLC, attorneys; Mr. Friedman and Wesley G. Hanna, on the briefs).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Defendants TGI Fridays, Inc. and Carlson Restaurants Worldwide, Inc. (collectively, TGIF) appeal, on leave granted, from an order entered by the Law Division on February 13, 2015, denying their motion to reconsider class certification and de-certify the class or, in the alternative, to revise the class definition. Plaintiffs Debra Dugan, Alan Fox and Robert Cameron cross-appeal from the court's order certifying the class. For the reasons that follow, we reverse on the appeal, dismiss the cross-appeal, and remand the matter to the trial court for further proceedings on plaintiffs' individual claims.

I.

We begin our discussion with a summary of the relevant procedural history and facts, as revealed in the record on appeal.

A. <u>The Complaint</u>.

On January 12, 2010, Dugan filed a putative class-action complaint against TGIF alleging that the restaurant chain violated the Consumer Fraud Act (CFA), <u>N.J.S.A.</u> 56:8-1 to -184,

and the Truth in Consumer Contract Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, by: (1) failing to list prices for beer, mixed drinks, and soft drinks on its restaurant menus; and (2) engaging in an unconscionable commercial practice by charging different prices for the same beverage, depending upon where in the restaurant the beverage was served.

Dugan alleged that she had been a patron of TGIF's corporate-owned restaurant in Mount Laurel and was aggrieved by TGIF's failure to disclose the price of beverages on the restaurant's menus. Dugan claimed she became aware of the prices after she had consumed the beverages and was presented with a check. Dugan also claimed that on December 5, 2008, she was charged $2.00 for a beer at the bar and later charged $3.59 for the same beer at a table in the restaurant.

The proposed plaintiff class consisted of all TGIF customers who had "purchased items from the menu that did not have a disclosed price." The proposed defendant class consisted of the thirty-eight TGIF restaurants in New Jersey, some of which are corporate-owned, and some of which were are operated as a franchise of TGIF.

B. TGIF's Motion to Dismiss.

In June 2010, TGIF filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted.

The judge entered an order denying the motion. We denied TGIF's motion for leave to appeal from the judge's order, but the Supreme Court later granted TGIF's motion and summarily remanded the matter to this court for consideration of TGIF's interlocutory appeal. We affirmed the trial court's order in an unpublished opinion. Dugan v. TGI Fridays, Inc., No. A-3098-10 (App. Div. Oct. 25, 2011) (slip op. at 20).

We held that Dugan had alleged sufficient facts to support a claim under the CFA, specifically a violation of N.J.S.A. 56:8-2.5, which mandates point-of-sale disclosure of the price of merchandise at retail, and N.J.S.A. 56:8-2, which declares certain unconscionable commercial practices to be unlawful. Id. at 12-14. We also held that Dugan pled sufficient facts to show that she sustained an ascertainable loss, and that TGIF's alleged unlawful conduct was the cause of her loss. Id. at 14-18.

We stated, "At the very least, if proven, Dugan would logically have lost the benefit of a $2.00 beer and paid $1.59 more for the privilege of moving from the bar to a nearby table." Id. at 17. We added that the measure of out-of-pocket loss, which is "typically applied when [a] misrepresentation induces a consumer to pay a higher price than is reasonable," is the difference between the price paid and the actual value of the property acquired. Ibid.

4

We also held that the facts as alleged in the complaint were sufficient to support a claim that TGIF's alleged failure to include prices on its menus caused the loss. Id. at 17-18. We noted that, in her complaint, Dugan had not expressly alleged

> (1) that she looked at the menu, discerned the absence of prices, and assumed a reasonable price lower than what she was eventually charged, or (2) that she purchased a beer at the bar, actually noticed that it cost two dollars, and then decided to buy another at a table on the assumption the price would be the same.

> [Id. at 17.]

We observed that the lack of such facts might result in the grant of summary judgment in favor of TGIF, but at that stage of the litigation, Dugan's complaint had to be reviewed with some indulgence. Id. at 18. We concluded that Dugan had alleged facts establishing a sufficient factual "link between the alleged unconscionable commercial practices and her purported injury." Ibid.

We also determined that Dugan had alleged sufficient facts to state a claim under the TCCWNA. We found that Dugan was a "consumer" as that term is defined in N.J.S.A. 56:12-15. Id. at 18-20. We found that Dugan had alleged TGIF offered her a contract that included a provision which allegedly violated the CFA, and "the affirmative act that may trigger [liability under] the TCCWNA is the offer encompassed by TGIF's menu." Id. at 19-

C. The Amended Complaints.

In December 2011, Dugan filed an amended complaint, alleging that she purchased unpriced beverages at TGIF's Mount Laurel restaurant on at least two occasions. Dugan claimed that on one occasion she purchased two mixed drinks. On the other occasion, Dugan purchased a beer at the bar, and then purchased a beer and a soft drink at a table in the restaurant. Dugan claimed she was not aware of the costs of the beverages until after she had consumed the drinks and was presented with a check.

In March 2013, a second amended complaint was filed adding Fox and Cameron as plaintiffs and putative class representatives. Fox claimed that in June 2007, he ordered two unpriced mixed drinks at TGIF's corporate-owned restaurant in Cherry Hill. He alleged that if he had known the prices he would be charged for the drinks, he would "have ordered something different and certainly would not have ordered two [drinks]." Cameron alleged that in August 2012, he ordered an unpriced beer and soda at TGIF's franchise-operated restaurant in Toms River.

In the second amended complaint, Dugan alleged that she had ordered unpriced soft drinks, mixed drinks and beer at various TGIF restaurants over the previous six years. She claimed TGIF's

practice of making an affirmative offer for the sale of beverages without posting prices facilitated the sale of "more beverages at a given price point than would be feasible if the prices were disclosed." She claimed that this was "menu engineering," which was "an intentional and carefully planned act" designed to "exploit consumer psychology and manipulate consumer perceptions."

D. Discovery.

Dugan was deposed and testified that on December 5, 2008, she ordered a beer at the bar at TGIF's Mount Laurel restaurant, while waiting with her friends for a table. Dugan conceded that she did not review the menu at the bar, or review the price of the beer indicated on the receipt before she paid the bar bill. Dugan then ordered another beer and a soda while seated at a table in the restaurant. She conceded that she did not read the beverage section of the menu, did not review the final bill before she paid it, and had no expectation of what the cost of a beer or soda would be.

When she returned home, Dugan reviewed the receipts. Dugan learned that she had paid $2.00 for the beer at the bar, which was what she said was the "happy-hour price." She paid $3.59 for the beer at the table. She also paid what she characterized as a "steep" price for a soda.

Dugan later submitted a certification to the trial court, in which she stated that she had looked at the beverage section of the TGIF menu on many occasions. Dugan asserted that she had expected to pay the same price for a beer at the bar and at a table in the restaurant.

At his deposition, Fox testified that on June 26, 2007, he ordered three mixed drinks at the company-owned TGIF in Cherry Hill. In his answers to interrogatories, Fox explained that he ordered the drinks because he had had "a bad day" and wanted to "adjust" his "attitude." Prices for the drinks were not listed on the menu. Fox testified that he "went ballistic" when he received the bill because he had not realized that each drink cost $6.99. Fox said he expected to pay about $5.75 per drink.

Fox returned with his wife to the TGIF in Cherry Hill in January 2013 and ordered two mixed drinks and a beer. Prices for the drinks were not listed on the menu. Fox testified that, based on the placement of the drinks on the menu, he thought TGIF was running a special on mixed drinks.

In response to Fox's query, the server told him that the mixed drinks cost $7.00 and a beer costs $5.00. When Fox received the bill, he discovered that one mixed drink cost $7.19 and the other cost $8.20. The beer cost $5.29. Fox testified that he thought the prices of the mixed drinks were a little

A-3485-14T3

high. He stated that he was dissatisfied "with the deception" perpetrated by TGIF.

In its answers to interrogatories, TGIF indicated that fourteen of the TGIF restaurants in New Jersey are company-owned, including the restaurants in Cherry Hill and Mount Laurel. Twenty restaurants are franchise-operations, including the Toms River restaurant. All corporate-owned and franchise-run restaurants in New Jersey use the same menus, which were provided by and are subject to Carlson's approval. TGIF stated that in accord with the "customary practice within the bar restaurant industry," the company-owned restaurants do not list the prices for beer, soda and mixed drinks on their menus. However, a franchisee could post beverage prices if TGIF authorized it to do so.

E. Class Certification.

In late 2012, plaintiffs filed a motion for class certification, and TGIF thereafter filed a cross-motion for summary judgment. The judge denied TGIF's motion for summary judgment, and granted plaintiffs' motion to certify the class. The judge found that plaintiffs had met the requirements for a class action in Rule 4:32-1(a), and demonstrated both the predominance of the common issues and superiority of a class action over other trial techniques, as required by Rule 4:32-

9 <span>A-3485-14T3</span>

1(b).

The judge defined the class as all persons who visited a company-owned TGIF restaurant "from January 12, 2004 to June 18, 2014, relied upon [TGIF's] menus, and purchased an offered but unpriced soda, beer or mixed drink." The defendant class was limited to the fourteen company-owned TGIF restaurants in New Jersey.

On September 5, 2014, the judge granted TGIF's motion to dismiss Cameron as a class representative. The judge found that Cameron did not fit within the class definition since he allegedly ordered unpriced beverages at a franchise-owned TGIF. The judge also extended the cut-off time for claims to July 14, 2014, the date Carlson sold the TGIF chain of restaurants to new owners, who were not named in the complaint.[1]

F. <u>Motions to redefine the class, and for Reconsideration or Decertification of the Class</u>.

In November 2014, plaintiffs filed a motion to amend the class definition for purposes of preparing notices to class members. Plaintiffs sought to remove the requirement that the class member "relied upon" TGIF's menu, and to define the class as any customer who purchased an unpriced beverage during the

---

[1] The new owners are Sentinel Partners, LLC, and TriArtisan Capital Partners, LLC.

relevant time period. The judge granted the motion and found that the class members need not show reliance to pursue claims under the CFA and TCCWNA.

On December 23, 2014, the judge entered an order approving the notices for class members. The order also changed the definition of the class to include: "All persons who visited [a] TGI Friday's restaurant in New Jersey that is owned by TGI Friday's (i.e. company owned store) from January 12, 2004 to July 14, 2014, and purchased an offered but unpriced soda, beer or mixed drink."

In January 2015, TGIF filed a motion to reconsider class certification and decertify the class or, in the alternative, to revise the class definition. By order entered February 13, 2015, the judge denied the motions. The judge ordered class notification to begin on February 20, 2015.

G. The Appeal and Cross-Appeal.

TGIF filed a motion with this court for leave to appeal the trial court's orders of December 23, 2014 and February 13, 2015, and to stay class notification. We denied TGIF's motions. Thereafter, the Supreme Court stayed class notification, granted TGIF's motion for leave to appeal, summarily remanded the matter to this court for consideration of the merits of the appeal, and stayed further trial court proceedings pending a decision on the

A-3485-14T3

appeal.

On appeal, TGIF argues that the trial court erred by denying its motion to reconsider class certification and decertify the class because plaintiffs failed to meet the requirements for maintaining a class action under the court rules. In the alternative, TGIF argues that the trial court erred by refusing to revise the definition of the class to require that each class member has read TGIF's menu before purchasing an unpriced beverage.

In their cross-appeal, plaintiffs argue that the trial court erred by limiting the class to persons who purchased unpriced beverages at TGIF's company-owned restaurants; excluding purchasers of coffee, tea and miscellaneous beverages from the class; and excluding persons who purchased unpriced soda, beer and mixed drinks after July 14, 2014.

II.

We begin our analysis with the general standards that govern our review of the trial court's certification order, and the requirements in our court rules for maintaining a class action.

The decision on whether to certify a class rests in the sound discretion of the trial court. Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 506 (2010). In making that decision, the

trial court must accept as true the allegations in the complaint and cannot decide "the ultimate factual issues underlying the plaintiff's cause of action." Id. at 505 (quoting Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 223 (1972) (internal quotation marks omitted)).

We review a trial court's order on class certification for abuse of discretion. Id. at 506. However, we apply a de novo standard of review when evaluating a trial court's decision on a question of law. Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 386 (2007); see also Beegal v. Park W. Gallery, 394 N.J. Super. 98, 111 (App. Div. 2007) (trial court's legal determinations relevant to class certification are reviewed de novo).

Under our court rules, the party seeking class action certification must first satisfy the general prerequisites for maintaining a class action in Rule 4:32-1(a), which provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class.

These factors are commonly referred to as numerosity, commonality, typicality and adequacy of representation. Lee, supra, 203 N.J. at 519.

The party seeking class certification also must meet the criteria of Rule 4:32-1(b), which requires, among other things, that the court find "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3). This subsection of the rule requires "the party seeking certification [to] demonstrate both predominance of the common issues and superiority of a class action over other trial techniques." Muise v. GPU, Inc., 371 N.J. Super. 13, 30 (App. Div. 2004).

To establish predominance, a plaintiff must demonstrate that "the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 108 (2007); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689, 712 (1997). In determining whether a plaintiff has satisfied this requirement, the trial court should "conduct a pragmatic assessment of various factors," including an inquiry as to: 1) "the significance of the common questions," which "involves a

14                                          A-3485-14T3

qualitative assessment of the common and individual questions rather than a mere mathematical quantification of whether there are more of one than the other"; 2) "whether the benefit of resolving common and presumably some individual questions through a class action outweighs doing so through individual actions"; and 3) "whether a class action presents a common nucleus of operative facts." Lee, supra, 203 N.J. at 519-20 (citation and internal quotation marks omitted).

The court also must determine whether a class action is superior to other trial techniques. Id. at 520. This decision "involves considerations of fairness to the putative class members and the defendant, and the 'efficiency' of one adjudicative method over another." Ibid. (citing In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 436 (1983)). Finally, the court must consider the manageability of a class action. Ibid. "Managing a state-wide class action almost always will be a difficult undertaking because '[c]omplexity is an inherent trait of class litigation.'" Ibid. (quoting Iliadis, supra, 191 N.J. at 117-18).

In making the predominance, superiority and manageability assessment, "a certifying court must undertake a 'rigorous analysis' to determine if the Rule's requirements have been satisfied." Iliadis, supra, 191 N.J. at 106-07 (citation

omitted). The certifying court "must understand and analyze the 'claims, defenses, relevant facts, and applicable substantive law' in determining whether a class action: (1) presents common issues of fact and law that predominate over individual ones, (2) is a superior means of achieving efficient and just results, and (3) is manageable." Lee, supra, 203 N.J. at 505-06 (quoting Iliadis, supra, 191 N.J. at 107).

III.

TGIF contends plaintiffs failed to establish the predominance requirement of Rule 4:32-1(b)(3) with regard to the claims under the CFA.

A CFA claim brought by a consumer "requires proof of three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 121 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). "'A plaintiff who proves all three elements may be awarded treble damages, "attorneys" fees, filing fees and reasonable costs of suit.'" Id. at 121 (quoting N.J.S.A. 56:8-19).

An ascertainable loss "is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" D'Agostino v. Maldonado, 216 N.J. 168, 185 (2013) (quoting Thiedemann v.

16

Mercedes-Benz USA, L.L.C., 183 N.J. 234, 248 (2005)). A consumer may establish an ascertainable loss if he or she suffers an out-of-pocket loss. Lee, supra, 203 N.J. at 522. Furthermore, the consumer must "demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." Id. at 522 (quoting N.J.S.A. 56:8-19 (emphasis added)). The statutory phrase "as a result of" connotes a "causal nexus requirement." Bosland, supra, 197 N.J. at 557-58.

Here, plaintiffs allege they suffered ascertainable losses as a result of TGIF's alleged unlawful conduct, specifically, its failure to list prices on its menus for certain beverages. Plaintiffs allege TGIF's practice violates N.J.S.A. 56:8-2.5, and constitutes an unconscionable commercial practice in violation of N.J.S.A. 56:8-2. However, in order to obtain damages, each plaintiff must show that he or she sustained an ascertainable loss and that the alleged unlawful conduct caused the loss.

In this case, plaintiffs failed to show that common issues of fact as to whether TGIF's customers who purchased unpriced soda, beer or mixed drinks predominate over issues that pertain to individual class members. The class definition approved by the trial court assumes that any patron at a TGIF company-owned restaurant who purchased those beverages sustained an out-of-

17

pocket loss "as a result of" TGIF's failure to list prices for these items on the menu. The court's analysis fails for several reasons.

The class definition erroneously includes all persons who purchased an unpriced soda, beer or mixed drink regardless of whether they reviewed the menu before purchasing the beverages. However, a person cannot establish that he or she sustained an ascertainable loss caused by TGIF's alleged unlawful conduct unless that person reviewed the beverage section of the menu before making the purchase. If a person did not look at the beverage section of the menu, TGIF's failure to list prices on the menu had no causal nexus to the person's decision to purchase a particular beverage.

Furthermore, based upon this record, we must assume some persons who purchased a soda, beer or mixed drink at a TGIF-owned restaurant in the period at issue made decisions as to whether to order those beverages that had nothing whatsoever to do with whether the prices were listed on the menu. For example, a patron may have asked the price before ordering a soda, beer, or mixed drink. If so, the patron would have been informed of the price of the beverage before purchasing it.

In this regard, we note that Fox claims one of TGIF's servers misinformed him of the prices of certain beverages that

he purchased. There is, however, no evidence that TGIF's servers routinely misinformed customers as to the prices of beverages, or that it was TGIF's practice to have its servers tell customers one price and charge them a higher price later. In any event, Fox's experience confirms that some TGIF patrons ask the price of a beverage before purchasing it.

In addition, some of the persons who purchased a soda, beer or mixed drink at company-owned TGIF restaurants in the relevant period may have previously patronized one of TGIF's restaurants and knew the prices that would be charged for these beverages. Patrons also may have assumed the prices they would be charged based on prices charged in other restaurants. Thus, the absence of menu pricing for soda, beer and mixed drinks would not have had any effect upon the decisions of these patrons to purchase these beverages.

Plaintiffs allege, based on certain marketing studies and tests, that TGIF patrons will spend an average of $1.72 more on beverages if the prices are not listed on the menu.[2] However, even if this allegation is proven, it would not establish that all persons who purchased soda, beer and mixed drinks at TGIF-owned restaurants spent more on these beverages because prices

---

[2] We note that TGIF asserts that plaintiffs have misinterpreted the studies and tests. TGIF also asserts that there is no evidence that TGIF acted or relied upon these studies and tests.

were not listed on the menus. As we have explained, a patron may have chosen to purchase a particular beverage on a specific date for any number of reasons that have nothing to do with the lack of menu pricing.

We also note that Dugan claims she was charged $2.00 for a beer at the bar and was later charged $3.59 for the same beer at a table in the restaurant. Dugan asserts that the bar price was the price charged during "happy hour." Although Dugan may have been misled to believe she would be charged the "happy hour" price for both drinks, that may not be so as to other patrons who made similar purchases.

We are therefore convinced that, with respect to the claims under the CFA, the trial court erroneously found that issues of fact common to members of the class predominate over issues that affect individual class members. The court therefore erred by allowing these claims to be maintained as a class action.

The decision in International Union of Operating Engineers, supra, 192 N.J. 372, supports our conclusion. In that case, the plaintiff, a third-party payor of a healthcare benefits plan, brought an action against the defendant, the manufacturer of the prescription drug Vioxx, alleging it violated the CFA by engaging in a fraudulent marketing campaign that induced "third-party payors to accord Vioxx preferred status in their

formularies." Id. at 381.

In reversing the grant of class certification, the Supreme Court found that although each proposed class member received the same information from the defendant, the class members did not react "in a uniform or even similar manner." Id. at 390. The Court stated that each third-party payor

> made individualized decisions concerning the benefits that would be available to its members for whom Vioxx was prescribed. The evidence about separately created formularies, different types of tier systems, and individualized requirements for approval or reimbursement imposed on various plans' members and, to some extent, their prescribing physicians, are significant. That evidence convinces us that the commonality of defendant's behavior is but a small piece of the required proofs. Standing alone, that evidence suggests that the common fact questions surrounding what defendant knew and what it did would not predominate.

> [Id. at 391.]

Here, the "commonality" of TGIF's alleged unlawful conduct is but "a small piece of the required proofs." Ibid. As we have explained, there are numerous reasons why customers at TGIF-owned restaurants may have purchased a soda, beer or mixed drink in the relevant period, and whether the absence of menu pricing caused those customers to sustain an ascertainable loss cognizable under the CFA. Therefore, we conclude the court erred by permitting plaintiffs to maintain a class action for the CFA

claims.

Our decision in the earlier appeal does not require a different conclusion. There, we held that Dugan had pled sufficient facts to state a claim under the CFA, noting that the appeal involved review of the denial of a motion to dismiss for failure to state a claim, and the complaint had to be "parsed generously." Dugan v. TGI Fridays, Inc., supra, slip op. at 18. We held that, viewing the complaint indulgently, Dugan had stated a claim under the CFA.

However, we did not hold that all persons who purchased an unpriced soda, beer or mixed drink at a TGIF-owned restaurant necessarily sustained an ascertainable loss that was caused by TGIF's alleged unlawful conduct. We also specifically declined to address the issue of whether the matter should be certified as a class action. Id. at 21-22.

IV.

TGIF further argues that plaintiffs failed to establish the predominance requirement of Rule 4:32-1(b)(3) with respect to the claims under TCCWNA.

The purpose of the TCCWNA "is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 457 (2011).

The TCCWNA provides in relevant part that:

> No seller . . . shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract . . . or display any written . . . notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made . . . or the . . . notice or sign is given or displayed.
>
> [N.J.S.A. 56:12-15.]

The TCCWNA also provides that any person who violates the statute shall be liable to an aggrieved consumer for a civil penalty of not less than $100, actual damages, or both at the consumer's election, in addition to reasonable attorneys' fees and court costs. N.J.S.A. 56:12-17.

The TCCWNA does not create any new consumer rights, rather "[t]he rights, remedies, and prohibitions conferred by the TCCWNA are 'in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State.'" Shelton v. Restaurant.com, Inc., 214 N.J. 419, 428 (2013) (quoting N.J.S.A. 56:12-18).

In the earlier appeal, we held that Dugan had alleged sufficient facts to state a claim under the TCCWNA. Dugan v. TGI Fridays, Inc., supra, slip op. at 18-20. We found that the omission of prices from TGIF's menu qualified as an "affirmative

act" under the TCCWNA because that practice violated N.J.S.A. 56:12-15. Id. at 19. We also found that Dugan was a "consumer" under the statute, and that "the affirmative act that may trigger the TCCWNA is the offer encompassed by TGIF's menu." Id. at 20.

Here, TGIF argues that plaintiffs cannot establish predominance under Rule 4:32-1(b)(3) for the TCCWNA claims because "each individual class member will be required to demonstrate that he or she was provided with a menu that violates the law[.]"

Plaintiffs allege that TGIF instructs its servers to hand opened menus to all patrons. However, if TGIF gave its servers such instructions, they may not have been always followed. For example, a server may have forgotten to provide the menu to a customer, or a patron may have told the server a menu was not required. Individualized inquiries would be required to determine whether each class member was handed a menu that lacked beverage pricing.

Furthermore, claims for "actual damages" pursuant to N.J.S.A. 56:12-17 would necessarily involve individual inquiries to determine whether each class member sustained a loss caused by the absence of beverage pricing on TGIF's menus. Those inquiries would be similar to the individual inquiries required

to determine whether the class members sustained losses recoverable under the CFA.

We therefore conclude that with regard to their claims under the TCCWNA, plaintiffs have not established that issues of fact common to the members of the class predominate over issues that only affect individual class members. We conclude the court erred by allowing plaintiffs to maintain a class action to pursue these claims.

In view of our decision, we need not consider TGIF's other arguments regarding the class certification, or plaintiff's contention that the court erred by excluding certain TGIF patrons and purchases from the class.

Accordingly, the trial court's orders of December 23, 2014 and February 13, 2015, are reversed, and plaintiffs' cross-appeal is dismissed. The matter is remanded to the trial court for further proceedings on plaintiffs' individual claims. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3485-14T3