YANNOTTI, P.J.A.D., dissenting.
The majority concludes that the trial court mistakenly exercised its discretion by denying plaintiff's motion for class certification pursuant to Rule 4:32-1(b)(2). Because I believe the majority erroneously concludes plaintiff satisfied the rule's requirements for class certification, and because the decision is inconsistent with the reasoning in Dugan v. TGI Fridays, Inc., 231 N.J. 24, 171 A.3d 620 (2017), I respectfully dissent.
I.
In Dugan, the Court addressed consolidated appeals in Dugan v. TGI Fridays, Inc. and Bozzi v. OSI Restaurant Partners, LLC. Id. at 34, 171 A.3d 620. In the Dugan case, the plaintiff alleged that "during visits to a company-owned TGIF restaurant," she purchased soft drinks, mixed drinks, and beer off the menus. Id. at 36, 171 A.3d 620. The plaintiff alleged that she was not informed of the prices of the beverages until the restaurant's staff presented her with a check. Id. at 36-37, 171 A.3d 620. She further claimed that she was charged $2 for a beer at the bar, but later charged $3.59 for the same beer after moving to a table. Id. at 37, 171 A.3d 620.
The plaintiff claimed the defendants violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -206, by engaging in unconscionable commercial practices contrary to N.J.S.A. 56:8-2.
*197 Id. at 36, 171 A.3d 620. She also claimed the defendants violated N.J.S.A. 56:8-2.5 by selling, or attempting to sell, "merchandise that is not price marked at the point of purchase." Ibid. In addition, the plaintiff claimed the defendants violated the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, by offering beverages "without notifying the consumer of the total selling price at the point of purchase." Ibid. The plaintiff later amended her complaint and added an additional plaintiff and class representative. Id. at 38-39, 171 A.3d 620.
The plaintiffs in Dugan sought class certification pursuant to Rule 4:32-1(b)(3). See id. at 37, 171 A.3d 620. The trial court granted the motion. Id. at 39, 171 A.3d 620. The trial court defined the class to consist of "[a]ll persons who visited a [TGI Fridays] restaurant in New Jersey that is *992 owned by [the defendants] from January 12, 2004 to July 14, 2014, and purchased an offered but unpriced soda, beer or mixed drink." Ibid. (first alteration in original).
On appeal, we reversed the trial court's order, finding that the plaintiffs had not met the requirement of Rule 4:32-1(b)(3) that the "common issues of fact as to ... TGIF's customers who purchased unpriced soda, beer or mixed drinks predominate over issues that pertain to individual class members." Id. at 40, 171 A.3d 620 (alteration in original) (quoting Dugan v. TGI Fridays, Inc., 445 N.J. Super. 59, 79, 135 A.3d 1003 (App. Div. 2016) ).
The Supreme Court affirmed our judgment. Id. at 34, 171 A.3d 620. The Court noted that the plaintiffs in Dugan indicated that they intended to establish their claims under the CFA based on "a fraud on the market or price inflation theory," premised on the assertion that the defendant's unlawful pricing practices allowed it to overcharge customers. Id. at 58, 171 A.3d 620. The Court held, however, that the plaintiffs could not establish "ascertainable loss and causation" on their CFA claims "by demonstrating that [the defendants'] beverage prices were higher than they would have *198 been had [the defendants] listed [their] prices on [the] restaurant menus." Id. at 60, 171 A.3d 620.
The Court stated:
A "fair" or "reasonable" price derived from the per-visit expenditures of marketing research subjects is no substitute for proof of the actual claimants' ascertainable loss and causation. Plaintiffs' price-inflation theory does not globally establish those elements of the CFA for the vast and varied class of restaurant customers for which the Dugan plaintiffs seek certification.
[ Ibid. ]
The Court noted that the Dugan plaintiffs were not prepared to present individual proof that every claimant in their proposed class would have purchased fewer or less expensive drinks, or none at all, if the defendants had disclosed the beverage prices. Id. at 55, 171 A.3d 620.
The Court therefore determined that with respect to the CFA claims, the plaintiffs in Dugan had not satisfied the predominance requirement of Rule 4:32-1(b)(3). Id. at 63, 171 A.3d 620. The Court reached a similar conclusion regarding the TCCWNA claims, noting that to establish those claims, a claimant had to show that he or she was an "aggrieved consumer," and the plaintiffs' claims "g[ave] rise to a range of individual questions" with regard to the interactions between the customers and the servers. Id. at 71, 171 A.3d 620.
II.
Here, defendant is a franchisee of TGI Fridays, Inc. and operates two TGIF restaurants in New Jersey. Plaintiff alleges that on August 1, 2012, he went to one of defendant's restaurants. He claims a server provided him with a menu and he thereafter ordered a beer and soda. Plaintiff thought his bill and the tip would cost about $20, and claims he was "shocked" when charged "$5[ ] for a mass produced beer" and almost $3 for a soda. Plaintiff alleges that when he left the restaurant, he looked at a menu and noticed it did not list the prices for drinks. He claims he would not have ordered the beverages, or would have ordered less expensive beverages, if the prices had been listed on the menu.
*199 In this case plaintiff asserts essentially the same claims that the plaintiffs asserted in Dugan. He alleges that defendant violated the CFA by engaging in an unconscionable business practice in violation of N.J.S.A. 56:8-2, based on defendant's failure to disclose the prices of beverages on the menu prior to sale. He alleges defendant *993 also violated the CFA by engaging in a form of "bait and switch" in violation of N.J.S.A. 56:8-2.2 because the price of the beverages purchased were not disclosed until the "merchandise" had been consumed. Plaintiff also claims defendant violated the TCCWNA because consumers allegedly "have a clearly established legal right to have the total selling price plainly marked or located at the point" of sale. In addition, plaintiff asserted claims for breach of contract and unjust enrichment.
Plaintiff sought monetary damages for himself; designation of a class of persons, which includes all of defendant's patrons who purchased items from menus that did not disclose prices; and declaratory and injunctive relief for himself and the members of the class. Plaintiff later filed a motion to certify a class pursuant to Rule 4:32-1(b)(2). In the amended complaint, plaintiff defined the class as "all customers of New Jersey South Jersey Pubs restaurants who purchased items from the menu that did not have a disclosed price."
It appears that plaintiff's application for class certification was based on the CFA and TCCWNA claims. It also appears that plaintiff has abandoned his claims for monetary relief on behalf of the class, and he only sought class certification under Rule 4:32-1(b)(2) for the purpose of seeking injunctive and declaratory relief on the CFA and TCCWNA claims.
As the majority notes, the trial court denied plaintiff's motion. Ante at 169-70, 213 A.3d at 975. The trial court determined that plaintiff had not satisfied the requirement of Rule 4:32-1(b)(2) that the claims of the class be cohesive. The court noted that under the CFA, the plaintiff could not seek injunctive relief on behalf of a class of persons without showing that the members of the class *200 each sustained some ascertainable loss. We thereafter granted plaintiff's motion for leave to appeal.
III.
To obtain class certification, a putative class representative first must establish the requirements of Rule 4:32-1(a), by showing that
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
In addition, Rule 4:32-1(b) provides that if the requirements of subsection (a) are satisfied, a class action may be maintained if
(1) the prosecution of separate actions by or against individual members of the class would create a risk of either of:
(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *994 and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ....
Our class action rules were modeled after those in the Federal Rules of Civil Procedure. Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103, 922 A.2d 710 (2007). In the absence of relevant New Jersey case law interpreting the class-action rules, we look to the federal courts' interpretation of the federal class action rules for guidance. Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 183, 896 A.2d 1101 (App. Div. 2006).
Here, the majority correctly concludes that to obtain class-action certification under Rule 4:32-1(b)(2), the putative class representative must show that the claims of the class are "cohesive."
*201 Ante at 181-83, 213 A.3d at 982-83. Our Supreme Court has not addressed this question, but several federal courts have determined that the criteria for certification of a class under federal rule 23(b)(2) requires a showing that the class and its claims are cohesive.
In Barnes v. American Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998), the Court of Appeals noted that it was "well-established" that for purposes of certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure, "class claims must be cohesive." The court also commented, that "a (b)(2) class may require more cohesiveness than a (b)(3) class ... because in a (b)(2) action, unnamed members are bound by the action and without the opportunity to opt out." Ibid.
Indeed, "cohesiveness is the touchtone of a (b)(2) class" because "the relief sought must perforce affect the entire class at once." Ebert v. Gen. Mills, Inc., 823 F.3d 472, 480-81 (8th Cir. 2016) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 361-62, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ). The need for cohesiveness requires "an inquiry into the relationship between the class, its injuries, and the relief sought" because of the requirement that final injunctive relief be appropriate for the class as a whole. Shook v. Bd. of Cty. Comm'rs of El Paso, 543 F.3d 597, 604 (10th Cir. 2008).
The absence of such cohesiveness "can preclude certification." Ibid. (citing Maldonado v. Ochsner Clinic Found., 493 F.3d 521, 524 (5th Cir. 2007) ; In re St. Jude Med., Inc., 425 F.3d 1116, 1121 (8th Cir. 2005) ; Barnes, 161 F.3d at 143 ). Furthermore, " 'disparate factual circumstances of class members' may prevent a class from being cohesive ...." Gates v. Rohm & Haas Co., 655 F.3d 255, 264 (3d Cir. 2011) (quoting Carter v. Butz, 479 F.2d 1084, 1089 (3d Cir. 1973) ).
A. Claims Under the CFA
The majority concludes plaintiff satisfied the cohesiveness requirement in Rule 4:32-1(b)(2) with regard to the claims under the *202 CFA. Ante at 188-89, 213 A.3d at 986-87. The majority states that the trial court erred by concluding that plaintiff could not seek class-based injunctive relief for the alleged CFA violations. Ibid. The majority also states that the trial court "misconstrued the requirement for cohesiveness to include a requirement that plaintiff had to prove that the class members could all establish damages or an ascertainable loss." Ibid.
It should be noted that in this case, plaintiff sought certification of a class that includes all persons who purchased a beverage at defendant's restaurants from menus that did not include beverage prices. The majority finds class certification is appropriate under (b)(2) because defendant allegedly acted or failed to act "on grounds generally applicable to the *995 class" by failing to provide patrons with menus that include beverage prices. Ante at 190-91, 213 A.3d at 987-88.
In my view, the claims and the relief sought are not appropriate for certification under Rule 4:32-1(b)(2) because although defendant allegedly provided the putative class members with menus that did not have beverage pricing, the class members may have chosen to purchase beverages for reasons that had nothing to do with the lack of beverage prices on the menu. Indeed, plaintiff alleges he purchased beverages, notwithstanding the absence of that information, apparently with the expectation that he would be charged a price less than he was actually charged.
Other patrons may have been return customers, who knew the prices that defendant would charge for beverages. In addition, other patrons may have had no concern as to the amounts defendant would charge for drinks. Thus, there is a lack cohesiveness among the putative class members as to whether they were, in fact, harmed by the lack of beverage pricing on the menus.
I believe the majority also errs by determining that private litigants can obtain class-based injunctive relief under Rule 4:32-1(b)(2) for the alleged violations of the CFA. The majority concludes that if the class representative shows an ascertainable loss to support the CFA claims, injunctive relief may issue as to the *203 entire class without proof that members of the class sustained any ascertainable losses. Ante at 188-89, 190-91, 213 A.3d at 986-87, 987-88.
As initially enacted, the CFA did not include any private right of action. Dugan, 231 N.J. at 50, 171 A.3d 620. The CFA only authorized the Attorney General to seek relief to address consumer fraud. Ibid. (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 14, 647 A.2d 454 (1994) ). The CFA was later amended to permit consumers to bring private actions to recover refunds and damages. Id. at 50-51, 171 A.3d 620 (citing Weinberg v. Sprint Corp., 173 N.J. 233, 248, 801 A.2d 281 (2002) ; Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 226, 294 A.2d 7 (1972) ).
When pursuing claims under the CFA, the Attorney General is not required to show a consumer was damaged by the alleged unlawful conduct; however, "a private plaintiff must show that he or she suffered an 'ascertainable loss.' " Id. at 52, 171 A.3d 620 (quoting Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473, 541 A.2d 1063 (1988) ); see also Weinberg, 173 N.J. at 251, 801 A.2d 281 (stating that the CFA "unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action"); Lee, 203 N.J. at 522, 4 A.3d 561 (holding that to establish causation under the CFA, a private litigant must prove that he or she "suffered an ascertainable loss").
In Weinberg, the Court emphasized that there is a fundamental difference between actions brought by the Attorney General and private actions permitted by the CFA. Weinberg, 173 N.J. at 250, 801 A.2d 281. The Court stated that, "In effect, the [CFA] permits only the Attorney General to bring actions for purely injunctive relief." Ibid. The Court held that the CFA "allows a private cause of action to proceed for all available remedies, including an injunction, whenever a consumer can plead a claim of ascertainable loss that can survive a motion for summary judgment." Id. at 253, 801 A.2d 281. Therefore, if the plaintiff does not succeed on the damage claim at trial, the plaintiff could be awarded injunctive relief and attorney's fees if he or she proves an unlawful practice in violation of the CFA. Ibid.
*204 Here, the majority erroneously concludes that plaintiff can assert claims for *996 injunctive relief on behalf of the class for the alleged CFA violations without any proof that the members of the class sustained an ascertainable loss as a result of the alleged unlawful acts or omissions. Weinberg makes clear that a claim of ascertainable loss is an essential element of a private cause of action under the CFA, and generally private litigants may not bring actions under the CFA seeking only injunctive relief. Weinberg, 173 N.J. at 250, 801 A.2d 281.
Weinberg holds that a private plaintiff can be awarded injunctive relief under the CFA on an individual basis, but only if the plaintiff presents a bona fide claim of ascertainable loss that would survive a motion for summary judgment. Id. at 253, 801 A.2d 281. Here, plaintiff has not presented such claims on behalf of the putative class members. In the absence of a bona fide claim of ascertainable loss on the part of the class members, the CFA does not permit the issuance of injunctive relief.
Moreover, it cannot be assumed that each member of the putative class sustained a bona fide ascertainable loss due to the absence of menu beverage pricing. As explained in Dugan, each class member may have decided to purchase the beverage for reasons that may have had nothing to do with the menus' lack of beverage pricing. Thus, some members of the proposed class may not have sustained an ascertainable loss caused by the alleged violation of the CFA. Therefore, the claims asserted under the CFA on behalf of the class lack the cohesion required for certification under Rule 4:32-1(b)(2).
In its opinion, the majority relies upon Laufer for the conclusion that the putative class members in this case may obtain injunctive relief on their CFA claims. Ante at 186-88, 213 A.3d at 985-86. In my view, the majority's reliance upon Laufer is misplaced.
In that case, the plaintiff subscribed to a group insurance policy issued by the defendant, through an organization in which plaintiff was a member. Laufer, 385 N.J. Super. at 176-77, 896 A.2d 1101.
*205 The administrator of the policy issued a notice to policyholders stating that the policy had increased coverage, which included "nursing home benefits," and the plaintiff paid premiums for the additional coverage. Id. at 177-78, 896 A.2d 1101. The plaintiff later learned that the policy did not, in fact, include nursing home benefits. Ibid.
The plaintiff filed an action against the insurer and the administrator, claiming that the communications regarding the " 'nursing home' benefit[s]" violated the CFA, and that she sustained an "ascertainable loss" due to the deceptive communications. Ibid. The plaintiff brought the action on her own behalf and on behalf of a class consisting of all persons in the United States who had been insured under a group policy underwritten by the defendant insurer and managed by the administrator. Ibid.
Thereafter, the plaintiff filed a motion for class certification under Rule 4:32-1(b)(2). Ibid. The trial court limited the class to New Jersey residents. Id. at 179, 896 A.2d 1101. The trial court found that class certification was appropriate because the defendant insurer was alleged to have acted on grounds generally applicable to the class members, and that the alleged CFA violations would affect every potential class member in a similar manner. Ibid.
On appeal, the insurer argued that the complaint did not meet the requirements for certification under Rule 4:32-1(b)(2) because the plaintiff did not allege that the class members, other than the plaintiff herself, sustained an ascertainable loss. Ibid. The court held, however, that class *997 certification was appropriate under Rule 4:32-1(b)(2) because the notices sent to all policyholders "were potentially damaging to every member of the putative class, even though some class members may not have read the notices or relied upon the purported nursing home benefits in determining whether to maintain the coverage provided by the policy." Id. at 183-84, 896 A.2d 1101.
The court stated that the plaintiff was only seeking limited injunctive relief, specifically, notice to other class members that *206 the policy did not include nursing home coverage. Id. at 184, 896 A.2d 1101. The court determined that if the administrator's notices to the policyholders were found to have violated the CFA, it may be appropriate to grant final injunctive relief to all members of the class. Ibid.
In Laufer, the court also addressed the insurer's claims that the lawsuit could not be maintained as a class action because the plaintiff did not allege the other class members suffered an ascertainable loss as a result of the alleged consumer fraud. Id. at 184-85, 896 A.2d 1101. The court stated that under Weinberg, the plaintiff must present a claim of an ascertainable loss in order to establish standing to sue, but once that threshold requirement is satisfied, the plaintiff can pursue all other available remedies, including injunctive relief. Id. at 186, 896 A.2d 1101 (citing Weinberg, 173 N.J. at 253, 801 A.2d 281 ). The court held that in a class action, only the putative class representative is required to establish standing. Ibid. (citing Lewis v. Casey, 518 U.S. 343, 395, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Souter, J., concurring in part, dissenting in part)).
In my view, Weinberg does not support the conclusions reached in Laufer. In Weinberg, the Court held that an individual private party who presents a CFA claim with a bona fide claim of ascertainable loss could obtain injunctive relief and attorney's fees even if the damage claim ultimately fails at trial. See Weinberg, 173 N.J. at 253, 801 A.2d 281. The Weinberg Court did not address the question of whether a (b)(2) class action could be maintained under the CFA on behalf of a putative class without establishing that each member of the class suffered bona fide ascertainable loss.
Furthermore, to the extent that Laufer suggests that a (b)(2) class action can be maintained on that basis, the decision is inconsistent with the Court's statement in Weinberg that "the plain language of the [CFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action[.]" See id. at 251, 801 A.2d 281 ; see also *207 Dugan, 231 N.J. at 52, 171 A.3d 620 ; Lee, 203 N.J. at 522, 4 A.3d 561. The court in Laufer stated that only the putative class representative must establish "standing," but standing for purposes of establishing a private cause of action under the CFA requires proof of an unlawful act or omission, as well as a bona fide claim of ascertainable loss.
Here, the majority concludes that under Laufer, the plaintiff in this case need only establish a bona fide claim of an ascertainable loss to obtain class certification under Rule 4:32-1(b)(2). In my view, however, Weinberg supports the conclusion that the class representative also must establish bona fide claims of ascertainable loss on behalf the class members because without such proof, the CFA does not permit the issuance of injunctive relief on their behalf. Moreover, an initial showing of a bona fide ascertainable loss on the part of each class member is necessary to establish that the claims of the class members are cohesive. Because the class as defined by plaintiff includes persons that may or may not have sustained an ascertainable loss, based on their own particular experiences, the CFA
*998 claims asserted on behalf of the class are not sufficiently cohesive for class certification under Rule 4:32-1(b)(2).
The majority also finds support for its decision in the Supreme Court's decision on the claims asserted in Bozzi v. OSI Restaurant Partners, LLC, the companion case decided with Dugan. Dugan, 231 N.J. at 34-35, 171 A.3d 620. In Bozzi, the plaintiff asserted claims under the CFA and TCCWNA based on allegations that customers who ordered more than one beverage on a visit to an OSI restaurant were charged a higher price for the second or subsequent beverage of the same brand, type or volume, without informing the customer of the change. Id. at 64-67, 171 A.3d 620.
The Court found that if the proposed class were limited to the price-shifting claims, certification of a class is permissible under Rule 4:32-1(b)(3). Id. at 65, 171 A.3d 620. The Court determined that Bozzi's CFA claim satisfied the predominance requirement under the rule. Ibid. The Court stated:
*208 With the assistance of claimant-specific records, both parties will be in a position to determine the dates and locations of the visits at issue and may be able to identify the reasons for the inconsistent prices. Even if discovery proves that the price disparity alleged by the class derived not from a single corporate policy but from restaurant-specific happy hour or other pricing practices, the trial court may be in a position to evaluate the disputed practices on a restaurant-by-restaurant basis. If plaintiffs prove an unlawful practice under the CFA, the receipts, in combination with other evidence, may support a finding of ascertainable loss and causation. The trial court would clearly be confronted with the task of adjudicating individual questions, but the existence of individual questions does not preclude a finding of predominance.
[ Id. at 65-66, 171 A.3d 620 (citing Lee, 203 N.J. at 526-28, 4 A.3d 561 ; In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 430-35, 461 A.2d 736 (1983) ).]
The Court's disposition of the Bozzi claims does not, however, support the majority's decision in this case. The claims in Bozzi were limited to alleged unlawful price-shifting as applied to a number of patrons, rather than the generalized lack of menu pricing that forms the basis of the CFA claims in this case. See id. at 65, 171 A.3d 620. Moreover, the Court emphasized that if the plaintiff in Bozzi proved that the price-shifting practice is unlawful, there is sufficient evidence to support a finding of ascertainable loss and causation. See id. at 65-66, 171 A.3d 620. Such evidence is absent here.
Therefore, I would conclude that plaintiff may not maintain a class action under Rule 4:32-1(b)(2) for injunctive under the CFA without establishing a bona fide claims of an ascertainable loss on behalf of the putative class members. I also would conclude that to the extent any members of the putative class allegedly sustained such losses, the CFA claims would lack the cohesiveness required for certification of the class under Rule 4:32-1(b)(2).
B. Claims Under the TCCWNA
The majority also concludes that the trial court erred by denying class certification for the claims under TCCWNA. The majority correctly notes that in Dugan, the Court found that the TCCWA claims should not be certified as a class action under Rule 4:32-1(b)(3), and in Dugan, the Court did not address whether *209 the TCCWNA claims were appropriate for class certification under (b)(2). Ante at 192-93, 213 A.3d at 989. *999 However, the Court's reasoning in Dugan is instructive. The Court noted that, "To determine predominance under Rule 4:32-1(b)(3), the court decides 'whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." ' " Dugan, 231 N.J. at 48, 171 A.3d 620 (quoting Iliadis, 191 N.J. at 108, 922 A.2d 710 ). Thus, the Court's decision that the plaintiff in Dugan failed to establish predominance for purposes of class certification under (b)(3) should inform our decision in this case.
In Dugan, the Court noted that under the TCCWNA, a seller may not, during the course of its business, offer any consumer to enter into a written contract if the contract "includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller[.]" Dugan, 231 N.J. at 68, 171 A.3d 620 (quoting N.J.S.A. 56:12-15). Therefore, to prevail on a claim under the TCCWNA, the plaintiff must be an "aggrieved consumer," and the defendant must have violated a "clearly established legal right" or "responsibility." Id. at 69, 171 A.3d 620 (quoting N.J.S.A. 56:12-15 and -17).
The Court held that the plaintiffs had not met the predominance requirement of Rule 4:32-1(b)(3) with regard to the TCCWNA claims. Id. at 71, 171 A.3d 620. The Court stated:
First, the requirement that a plaintiff be an "aggrieved consumer" in order to pursue a TCCWNA claim gives rise to a range of individual questions regarding the interaction between the customer and the server in this case. By its terms, the TCCWNA addresses "contract[s]," "warrant[ies]," "notice[s]," and "sign[s]" and does not apply when a defendant fails to provide a consumer with a required writing. Here, the writing on which plaintiffs rely is the restaurant menu. Plaintiffs concede that, at a minimum, a claimant must prove that he or she was presented with a menu during his or her visit to the defendant's restaurant in order to establish the defendants' liability under the TCCWNA. That critical inquiry cannot be resolved by customer receipts or other documents. Even if we accept plaintiff's theory of liability under the TCCWNA, the testimony of the individual claimant or another witness would be necessary to prove that the plaintiff satisfied the statute's requirements and is thus an "aggrieved consumer."
[ Id. at 71-72, 171 A.3d 620 (alterations in original) (citations omitted).]
*210 The TCCWNA claims asserted in this case are essentially the same as those asserted in Dugan and Bozzi. In my view, the Court's reasoning in Dugan applies with equal force to the question of whether the plaintiff in this case satisfied the cohesiveness requirement under Rule 4:32-1(b)(2) for the TCCWNA claims.
In its opinion, the majority asserts that the "concerns" of the Dugan Court regarding the TCCWNA claims do not apply here. Ante at 194, 213 A.3d at 989-90. The majority correctly noted that in Dugan, the Court did not address class certification under Rule 4:32-1(b)(2). However, the Court's decision that the TCCWNA claims did not meet the predominance requirement under Rule 4:32-1(b)(3) should inform our decision on whether the claims are cohesive.
Further, the Court in Dugan stated that to prevail on a TCCWNA claim, the plaintiff has to establish that he or she is an "aggrieved consumer." Dugan, 231 N.J. at 71, 171 A.3d 620. The Court stated that at a minimum, a claimant would have to establish that he or she received a menu that did not have beverage pricing, and in that regard, "individual questions would predominate over common issues at trial."
*1000 Id. at 72-73, 171 A.3d 620. Here, the majority states that those concerns are not present because the class only includes persons who received a menu and ordered a beverage. Ante at 194, 213 A.3d at 989-90.
But, as the Court stated in Dugan, whether a patron was an "aggrieved consumer" depends as well on the patron's interaction with a server. Dugan, 231 N.J. at 71, 171 A.3d 620. It also may depend on whether the patron previously had been at the restaurant, purchased a beverage, and knew what the price would be. Thus, TCCWNA claims asserted on behalf of the putative class are not cohesive.
The majority also states that the Court's concern in Dugan with the potential TCCWNA liability is not present in this case because plaintiff is not seeking monetary relief, which under TCCWNA could be $100 per violation. See id. at 74, 171 A.3d 620. The majority states that the cost of altering the menus at the two *211 restaurants would be minimal when compared to the potential liability in Dugan. Ante at 194, 213 A.3d at 989-90.
That may be so, but the absence of any potential liability does not address the key issue in this case, which is whether the claims of the putative class under TCCWNA are sufficiently cohesive for purposes of Rule 4:32-1(b)(2). In my view, they are not. Therefore, I would conclude that the trial court correctly decided to deny certification of the class under Rule 4:32-1(b)(2) for the TCCWNA claims.